643 F.2d 618
 11 Envtl. L. Rep. 20,440
 WESTERN MINING COUNCIL, a corporation, Robert G. Wright,
Cal-Ore Chapter, Western Mining Council, Barney McClendon,
Jr., Nor-Cal Chapter, Western Mining Council, Richard Arbo,
Hayfork Chapter Western Mining Council, Larry Cordtz,
Prospectors & Miners' Chapter of Shasta County, Western
Mining Council, Carl Ripatte, Mother Lode Miners
Association, Chapter of Western Mining Council, Pat Crombie,
Northern Mining Council, Chapter of Western Mining Council,
Barney Green, Los Angeles County Chapter, Western Mining
Council, Robert Sanders, Tuolumne Chapter, Western Mining
Council, Emmett Dahl, Santa Clara County Chapter, Western
Mining Council, Ron Reeves, Mariposa County Chapter, Western
Mining Council, Arne Soares, Rand-El Paso Mountains Chapter,
Western Mining Council, Keith O'Hara, Doris Dietemann,
Plaintiffs-Appellants,
v.
James G. WATT,* Secretary of the Interior of the
United States of America, Defendant-Appellee.
 No. 78-2669.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 11, 1980.
Decided April 23, 1981.
 
 1
 William B. Murray, Portland, Or., argued, for plaintiffs-appellants; Jane Skanderup, Meadow Vista, Cal., on brief.
 
 
 2
 Michael A. McCord, Dept. of Justice, Washington, D. C., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Eastern District of California.
 
 
 4
 Before ANDERSON and FLETCHER, Circuit Judges, and EAST,** District Judge.
 
 EAST, District Judge:
 
 5
 Plaintiffs appeal from a judgment dismissing their claim with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs sought a declaratory judgment rendering all or part of the Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701-1782, unconstitutional and invalid. Plaintiffs also sought to enjoin the Secretary of the Interior from expending certain funds for the enforcement of the Act. This appeal raises questions of standing, justiciability, and the adequacy of plaintiffs' allegations to state claims upon which relief can be granted. We note jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 I. THE CASE
 
 6
 In 1976, Congress passed the Federal Land Policy and Management Act ("Act"), 43 U.S.C. §§ 1701-1782. The Act establishes a system of land use planning and management for lands owned by the United States, and includes several provisions relating to mining claims.[1] The parties plaintiff include: (1) the Western Mining Council, a non-profit association of miners and owners of unpatented mining claims; (2) several of the Mining Council's chapters; and (3) several individuals who mine and own unpatented mining claims and who are citizens and taxpayers of both California and the United States.
 
 
 7
 Plaintiffs filed this action on November 2, 1977, seeking a declaratory judgment that the Act is unconstitutional in whole or in part, and seeking to enjoin the Secretary of the Interior from expending certain funds appropriated pursuant to the Act for law enforcement on the public lands. Plaintiffs allege that the Act violates the Fourth, Fifth and Sixth Amendments to the Constitution, the provisions of Article IV, Section 3, and the two year limitation upon appropriations for armies found in Art. I, § 8, cl. 12.[2] The complaint further alleges that the Act injures the individual plaintiffs by infringing their contractual rights as owners of unpatented mining claims located prior to passage of the 1976 Act, infringing their right to mine the claims, exposing them to unlawful searches and seizures, placing them in jeopardy from an unconstitutionally vague criminal statute, injuring them as state and federal taxpayers and denying their due process rights. The Western Mining Council and several of its chapters claim injury due to the alleged impairment of their members' ability to pay dues.
 
 
 8
 On April 19, 1978, the District Court granted defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the specific ground that plaintiffs had failed to state a justiciable claim, and granted leave to amend. When plaintiffs did not amend their complaint within 15 days, the District Court entered a judgment dismissing the complaint with prejudice, from which plaintiffs appeal.II. JUSTICIABILITY AND STANDING
 
 
 9
 The jurisdiction of the federal courts is limited to the adjudication of "cases or controversies" by Art. III, § 2, of the Constitution. Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37-38, 96 S.Ct. 1917, 1923-1924, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). There is a substantial question as to whether plaintiffs' allegations are sufficient to satisfy this jurisdictional prerequisite.
 
 
 10
 The "case or controversy" requirement demands first that the issues be justiciable; i. e., they must "present a real and substantial controversy which unequivocally calls for the adjudication of ... rights." Poe v. Ullman, 367 U.S. 497, 509, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961) (Brennan, J. concurring). A second case or controversy requirement is that the plaintiffs have standing to assert their claims. In Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343, the Supreme Court noted that the question of standing is in essence
 
 
 11
 "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.... In both dimensions it is founded in concern about the proper and properly limited role of the courts in a democratic society." Id. at 498, 95 S.Ct. at 2205 (citations omitted).
 
 
 12
 Standing requires as a constitutional minimum that a plaintiff allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The standing question focuses upon the party asserting the claim because "(t)he Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action ....' Linda R. S. v. Richard D., 410 U.S. 614, 617, (93 S.Ct. 1146, 1148, 35 L.Ed.2d 536) (1973)." Warth v. Seldin, 422 U.S. at 499, 95 S.Ct. at 2205. This constitutional dimension of the standing requirement is sometimes described as a requirement that the plaintiff allege "injury in fact." Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 218, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974); Ass'n of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).
 
 
 13
 Additionally, the courts have imposed standing limitations beyond those required by the Constitution. These prudential limitations arise from a concern that the courts not "be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." Warth v. Seldin, 422 U.S. at 500, 95 S.Ct. at 2206. Thus, the courts have held that when the alleged harm is a "generalized" or "abstract" grievance shared by a large class of citizens, jurisdiction will not be exercised. See, e. g., Warth v. Seldin, 422 U.S. at 499, 95 S.Ct. at 2205; Schlesinger v. Reservists Committee to Stop the War; United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); Ex Parte Levitt, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937).
 
 
 14
 The case or controversy requirement applies to actions under the Declaratory Judgments Act, 28 U.S.C. § 2201. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); Stewart v. M. M. & P. Pension Plan, 608 F.2d 776, 782 (9th Cir. 1979). Thus, insofar as they are constitutionally mandated, the doctrines of standing and justiciability apply to actions for declaratory judgments. Further, the Declaratory Judgment Act applies only to cases of "actual controversies." Thus, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). See also Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972); Stewart v. M. M. & P. Pension Plan.
 
 
 15
 Because standing and justiciability are limitations upon the exercise of the jurisdiction of the federal courts, we must consider these issues in regard to the various claims presented despite plaintiffs' contention that the justiciability issue is not properly before us. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969) (opinion of Marshall, J.); City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 233 (9th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980).
 
 III. PROCEDURE AND PLEADING REQUIREMENTS
 
 16
 Before turning to plaintiffs' individual claims, we note that the task of determining whether the justiciability and standing requirements are satisfied is somewhat complicated by the procedural posture of this case. On a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff. Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980); McKinney v. DeBord, 507 F.2d 501 (9th Cir. 1974). Consequently, we generally assume the factual allegations to be true. Brown v. Brown, 368 F.2d 992, 993 (9th Cir. 1966). We do not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969); Ogden River Water Users' Ass'n v. Weber Basin Water Conservancy, 238 F.2d 936 (10th Cir. 1956).
 
 
 17
 The liberal reading accorded complaints on 12(b)(6) motions is, moreover, subject to the requirement that the facts demonstrating standing must be clearly alleged in the complaint. Jenkins v. McKeithen, 395 U.S. at 422, 89 S.Ct. at 1849; City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d at 237 n.7. We cannot construe the complaint so liberally as to extend our jurisdiction beyond its constitutional limits. With these considerations in mind, we turn to plaintiffs' claims.
 
 IV. SPECIFIC CLAIMS
 A. Fourth Amendment Claim
 
 18
 43 U.S.C. 1733(c)(1) grants the Secretary authority to enter into contracts with local officials for law enforcement on the public lands, and authorizes the officials or their agents to "search without warrant or process any person, place, or conveyance according to any Federal law or rule of law." Plaintiffs allege that § 1733(c)(1) violates their right to be protected against unreasonable searches and seizures, and they seek to have it declared unconstitutional.
 
 
 19
 To satisfy the standing requirement, plaintiffs must allege some threatened or actual injury resulting from the application of the statute to them. Linda R. S. v. Richard D., 410 U.S. at 617, 93 S.Ct. at 1148. The injury must be both "real" and "immediate." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Plaintiffs have failed to allege that § 1733(c)(1) has been applied or threatened to be applied to them or anyone else, or that they have suffered any real or threatened injury at the hands of persons acting under the authority granted by the statute. Thus, plaintiffs[3] have no standing to challenge § 1733(c)(1).
 
 B. Vagueness Claims
 
 20
 Plaintiffs challenge §§ 1732(b), 1740 and 1733(a) and (g) on the grounds that these statutes, taken together, constitute a criminal statute which is unconstitutionally vague. Section 1732(b) directs the Secretary of Interior to take any action to prevent unnecessary or undue degradation of the public lands he is charged with managing.[4] Section 1733(a) directs the Secretary to issue regulations to implement the provisions of the Act, and provides for criminal penalties for violations of those regulations.[5] Section 1733(g) prohibits the use, occupancy or development of any portion of the public lands contrary to regulations or orders issued pursuant to regulations adopted by the Secretary or other responsible authority.[6] Finally, § 1740 directs the Secretary to promulgate rules and regulations to implement the Act, but provides that until such rules are promulgated, the lands shall be administered under existing regulations "to the extent practical."[7]
 
 
 21
 Plaintiffs interpret these statutes as meaning "that the defendant or his delegates has a free hand to make criminal any activity which the Secretary may choose to deem 'unnecessary or undue degradation of the lands' and such activity is made a crime before the Secretary or his delegate has even described it." On the basis of this interpretation, plaintiffs contend that these statutes are unconstitutionally vague.
 
 
 22
 We are not required to accept plaintiffs' legal conclusion that these statutes authorize spontaneous criminal lawmaking. Hiland Dairy, Inc. v. Kroger Co. The language of § 1733(a) is clear in providing that the criminal penalties only attach to the violation of regulations lawfully issued pursuant to the Act. Section 1740 provides that the promulgation of the regulations is subject to the requirements of the Administrative Procedure Act,[8] 5 U.S.C. § 551, et seq., which generally include notice of the proposed rule, opportunity to comment, and publication not less than 30 days before the rule takes effect. 5 U.S.C. § 553(b), (c), and (d). We, therefore, find no merit in plaintiffs' conclusion that the Act authorizes the Secretary or his delegates to render plaintiffs' activities criminal without prior notice.
 
 
 23
 The complaint also alleges that because the Secretary has "declared that digging in the ground constitutes unnecessary or undue degradation of the lands," plaintiffs are prevented from engaging in mining and doing certain assessment work required to retain their mining claims, presumably because they fear prosecution under the allegedly vague provisions of the Act. Plaintiffs argue that litigants are not required to subject themselves to possible criminal prosecution before seeking relief from an allegedly unconstitutional statute where actual interference with protected rights is alleged. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).
 
 
 24
 In Rincon Band of Mission Indians v. County of San Diego, 495 F.2d 1 (9th Cir.), cert. denied, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974), this Court held that in an action for declaratory judgment, a general threat of enforcement, absent any arrests for violation of a county gambling ordinance, was "insufficient to meet the case or controversy requirements" of Art. III of the Constitution. The Bolton decision was distinguished on the grounds that it involved a history of prosecutions under the challenged statute, a circumstance which was not shown in Rincon and which is not alleged here.
 
 
 25
 The Secretary's alleged statement that "plaintiffs cannot dig in the ground" is not a sufficiently specific threat of prosecution to confer standing upon plaintiffs. The statement, which is characterized neither as a regulation nor an order, presents at most a possibility that plaintiffs may eventually be prosecuted for violating regulations issued pursuant to the Act. Such a hypothetical threat is insufficient to satisfy either the "case or controversy requirement" of Art. III, § 2, or the "actual controversy" requirement of the Declaratory Judgment Act.
 
 
 26
 The alleged inability of plaintiffs to mine their claims and do their assessment work appears to be the result of fears of prosecution based on their own patently erroneous interpretation of the Act. Plaintiffs cannot, however, create a justiciable case or controversy simply by misreading statutes and claiming as injury fears born of their own error.
 
 
 27
 Plaintiffs Western Mining Council and its chapters allege that the Act impairs the ability of their members to pay dues, and therefore threatens their existence as trade associations. This allegation is apparently based[9] upon the contention that the Act and the Secretary's purported statement prevent the members from mining their claims by placing them in fear of criminal prosecution. Because such fears are not reasonably attributable to either the Act or the Secretary's statement, the alleged injury suffered by the trade associations is not sufficient to give them standing. Warth v. Seldin, 422 U.S. at 511, 95 S.Ct. at 2211.
 
 C. Impairment of Contract
 
 28
 Plaintiffs allege that, by virtue of the Mining Law of 1872,[10] the government offered to convey title to the mining claims upon plaintiffs' performance of certain conditions. Plaintiffs contend that by accepting that offer they entered into "contracts" with the government, and that the 1976 Act violates the Fifth Amendment due process clause by imposing new burdens and conditions upon those contracts.[11]
 
 
 29
 Specifically, plaintiffs contend that §§ 1734(b), 1735(a), 1761-1764, and 1781(c) impermissibly impose new burdens and conditions upon their contracts with the government. Plaintiffs object to the provision of § 1734(b) which authorizes the Secretary to require a deposit of payments to reimburse the government for the reasonable costs of certain "special studies" relating to applications and other documents concerning the public lands. There is, however, no allegation that the Secretary has required or threatened to require any such deposits from any of the plaintiffs. Nor is there any allegation that § 1734(b) is exclusively applicable to owners of unpatented mining claims, or that the Act will necessarily be applied to plaintiffs. Thus, even if we assume, arguendo, that individual plaintiffs do have "contracts" with the government concerning their mining claims, those contracts will not necessarily be burdened by § 1734(b).
 
 
 30
 The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a "case or controversy" within the meaning of Article III, Jensen v. National Marine Fisheries Service (NOAA), 512 F.2d 1189, 1191 (9th Cir. 1975), and is thus insufficient to satisfy the "actual controversy" requirement of the Declaratory Judgment Act. Plaintiffs here have alleged nothing more.
 
 
 31
 Sections 1735(a) and 1761 through 1764 are similarly not exclusively, or even primarily, applicable to owners of unpatented mining claims. The mere possibility that the Secretary may act in an arguably unconstitutional manner pursuant to one or more of those statutes is insufficient to establish the "real and substantial controversy" required to render a case justiciable under Article III. See Poe v. Ullman. Nor is such a possibility sufficient to meet the Article III standing requirement of "threatened or actual injury." See Warth v. Seldin; O'Shea v. Littleton.
 
 
 32
 Finally, plaintiffs allege that under § 1781(c), the "patents called for by plaintiffs' contracts will be burdened with added conditions, which the Secretary has been delegated authority to impose in his absolute discretion." Section 1781(c), by reference to a map, defines the "California Desert Conservation Area." Under § 1781(d), the Secretary is directed to "prepare and implement a comprehensive, long-range plan for the management, use, development, and protection of the public lands within the California Desert Conservation Area."
 
 
 33
 In Warth v. Seldin, 422 U.S. at 518, 95 S.Ct. at 2215, the Supreme Court said: "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Plaintiffs have not alleged that the Secretary has, in fact, implemented or threatened to implement such a plan, and it is not at all clear that every possible plan which might be implemented under the Act would affect plaintiffs' mining claims. Thus, plaintiffs again fall short of satisfying the requirements of Art. III, because they have again failed to allege any actual or threatened injury.[12]
 
 D. Substantive Due Process Claim
 
 34
 Sections 1744(a) and (b) set forth requirements that owners of unpatented mining claims file for record with the Bureau of Land Management, and certain other offices, various documents relating to intentions to retain mining claims, performance of assessment work and descriptions of the location of the claims.[13] Section 1744(c) provides that failure to comply with these requirements "shall be deemed conclusively to constitute an abandonment of the mining claim."[14] Plaintiffs allege that the filing requirements of § 1744 are unreasonable and arbitrary, and that the § 1744(c) conclusive presumption of abandonment is a "forfeiture statute with 'Due Process,' " which is unreasonably harsh.
 
 
 35
 Unlike the other challenged provisions of the Act, the filing requirements of § 1744 necessarily and of their own force apply to the individual plaintiffs here. Section 1744(c) leaves the Secretary no discretion, requiring that the claims be conclusively deemed abandoned when the filing provisions are not met. The legislative history indicates that a claim which is "deemed abandoned" is "extinguished." H.R.Rep.No.94-1724, 94th Cong., 2nd Sess. 62, reprinted in (1976) U.S.Code Cong. & Ad.News 6175, 6233.
 
 
 36
 Thus, if the individual plaintiffs here fail to file, they will lose their interests in their unpatented mining claims. Because an unpatented mining claim is a unique form of property which created in the owners a possessory interest in the land, Best v. Humboldt Placer Mining Co., 371 U.S. 334, 335-36, 83 S.Ct. 379, 381-382, 9 L.Ed.2d 350 (1963), the loss of such an interest would constitute a substantial injury. We believe that the allegations in this regard indicate a sufficiently real and immediate threat of injury to give rise to a justiciable, actual controversy,[15] and present a sufficiently immediate threat of injury to the individual plaintiffs to give them standing to challenge these provisions.[16]
 
 
 37
 Nonetheless, plaintiffs' allegations that the filing requirements are arbitrary and unreasonable are not sufficient to state a claim upon which relief can be granted. Although statutes which are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare" violate the Fifth Amendment's due process clause, Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926),[17] the assertion that the filing requirements are arbitrary and unreasonable is an erroneous legal conclusion which we are not obliged to accept as true for purposes of ruling on a 12(b)(6) motion. Hiland Dairy v. Kroger.
 
 
 38
 The reasonableness of the provisions of § 1744(a) and (b) was considered and affirmed in Topaz Beryllium Co. v. United States, 479 F.Supp. 309 (D. Utah 1979). That case set out in detail the legislative history of § 1744. Of particular relevance is a discussion in the Senate's report explaining the need for a federal "recordation" requirement and delineating the purpose of the statute:
 
 
 39
 "Although the Committee considered ... proposals (to completely amend the Mining Law) to be beyond the scope of S. 507, as ordered reported, the Committee did address a particular procedural problem concerning the registration of mining claims a problem which is particularly frustrating to the public land manager. The source of this problem is what is often termed 'stale claims.' There is no provision in the 1872 Mining Law, as amended, requiring notice to the Federal government by a mining claimant of the location of his claim. The Mining Law only required compliance with local recording requirements, which usually means simply an entry in the general county land records. Consequently, Federal land managers do not have an easy way of discovering which Federal lands are subject to either valid or invalid mining claim locations. According to some estimates, there are presently more than 6,000,000 unpatented claims in the public lands, excluding national forests, and more than half of the units of the National Forest System are reputedly covered by mining claims. Of course, the vast majority of these claims will never be pursued, and do not directly interfere with land management. They do, however, create significant uncertainty regarding the actual extent of valid locations. Furthermore, as unpatented mining locations can be bought and sold, they have become the basis for many unauthorized occupancies on the public lands. These claims constitute a cloud on the title of a large portion of the Federal lands.
 
 
 40
 "Subsection (a) would establish the recording system so necessary for Federal land planners and managers. It would require that all mining claims under the 1872 Mining Law, as amended, be recorded by the claimants with the Secretary within two years after the enactment of S. 507, as ordered reported, or within 30 days of the location of the claim, whichever is later. Any claim not recorded is to be conclusively presumed abandoned and will be void.
 
 
 41
 "This recording requirement is not intended to supersede nor displace the existing recording requirements under State law. As such, its purpose is to advise the Federal land managing agency, as proprietor, of the existence of mining claims. The agency is not intended to be the official recording office for all ancillary documents (i. e., wills, mechanic's liens, conveyances, tax liens, court judgments, etc.). The county public records would remain, as before, the official repository of such recorded documents. S.Rep.No.94-583, 94th Cong. 2nd Sess. at 64, 65 (1975)." Id. at 313. (Emphasis omitted.)
 
 
 42
 The Topaz opinion noted that in addition to terminating dormant and unpursued mining claims, the purposes of the Act include land use planning and management, the identification of lands subject to valid locations and invalid locations, and the identification of unauthorized occupancies. The legislative history of § 1744 makes it clear that on their face the filing requirements are neither an arbitrary nor irrational way of realizing these permissible governmental objectives, and we reject plaintiffs' conclusion to the contrary.
 
 
 43
 Similarly, we reject plaintiffs' conclusion that the provisions of § 1744(c) are unreasonably harsh in requiring that mining claims be conclusively presumed to be abandoned upon failure to file. As noted by the Topaz court, this requirement "fairly frees up the public domain from dormant and antiquated claims in which no one expresses a current and ongoing interest." 479 F.Supp. at 315. The purpose is clearly not to impose a penalty for tardiness in filing, as plaintiffs allege, but simply to free the public lands from stale claims in order to permit sound land use planning and management.[18]
 
 E. Procedural Due Process Claim
 
 44
 The complaint also contains an allegation that the Secretary has interpreted 43 U.S.C. § 1744 as authorizing the denial of procedural due process. This assertion is based upon a regulation which provides that owners of claims who have not complied with the filing requirements of § 1744 and certain implementing regulations[19] shall not be personally served with notice of actions or contests affecting their claims, and will nonetheless be bound by such contest proceedings. 43 C.F.R. § 3833.5(d) (1979). The same regulation, however, also states: "This section applies to all unpatented mining claims, mill or tunnel sites located after October 21, 1976, and shall apply to such claims or sites located on or before October 21, 1976, only after they have been recorded pursuant to § 3833.1-2 of this title." 43 C.F.R. § 3833.5(d). (Emphasis added.)
 
 
 45
 The complaint nowhere alleges that any of the plaintiffs have unpatented mining claims located after October 21, 1976. Nor does it allege that they have filed or recorded any of their claims located on or before October 21, 1976. Thus, plaintiffs' allegations are insufficient to show that 43 C.F.R. § 3833.5(d) has been or will ever be applied to them, and they are, therefore, without standing to challenge that regulation.
 
 F. Article IV, Section 3, Claims
 
 46
 The Act declares that it is the policy of the United States to retain the public lands in federal ownership unless it is determined through land use planning procedures that disposal of a particular parcel will serve the national interest. 43 U.S.C. § 1701(a)(1). Plaintiffs allege that some states contain less public land than does California, and contend that the retention policy, therefore, violates Art. IV, § 3, of the Constitution,[20] which they interpret as a blanket guarantee that "all states shall be dealt with equally by the federal government." Plaintiffs further claim that the retention policy injures them as state taxpayers because it restricts California's tax base, causing an increase in the amount of taxes which plaintiffs have to pay.
 
 
 47
 Section 1701(a)(13) provides that it is the policy of the United States that the federal government should, on a basis equitable to both the federal and local taxpayers, provide for payments to compensate states and local governments for burdens created as a result of the immunity of federal lands from state and local taxation. Plaintiffs contend that this section also violates Art. IV, § 3, on the grounds that it is a "dubious unilateral method of evading the compact made with the states upon their admission."
 
 
 48
 Plaintiffs allege that they are both federal and state taxpayers as well as citizens. We, therefore, analyze their standing to challenge these provisions in each of these capacities.
 
 
 49
 In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Supreme Court held that federal taxpayers have standing to challenge federal statutes only if certain "nexus" requirements are met:
 
 
 50
 "The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. This requirement is consistent with the limitation imposed upon state-taxpayer standing in federal courts in Doremus v. Board of Education, 342 U.S. 429, (72 S.Ct. 394, 96 L.Ed. 475) (1952). Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction." Id. at 102-03, 88 S.Ct. at 1953-1954.
 
 
 51
 Plaintiffs have failed to meet these nexus requirements. The provisions of § 1701(a)(1) and (13) are simply declarations of policy. In themselves, they impose no taxes and expend no funds. They can, therefore, be said to be exercises of the taxing and spending power, if at all, only in the more tenuous sense. Further, plaintiffs do not even assert that these sections of the Act injure them as federal taxpayers, but instead contend that they are injured as state taxpayers. Plaintiffs have, therefore, not established the required nexus between the claim asserted and their status as federal taxpayers.
 
 
 52
 Similarly, the complaint is insufficient to satisfy Flast's second requirement, because it contains no allegations that these provisions of the Act exceed a specific constitutional limitation on the congressional taxing and spending power. Not every provision of the Constitution which directs or prohibits some action by Congress constitutes a sufficiently specific limitation on the Art. I, § 8, taxing and spending power. In United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678, for example, plaintiffs challenged certain provisions of the Central Intelligence Agency Act relating to accounting statements on the grounds that they violated the constitutional mandate that a "regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." Art. I, § 9. The Supreme Court held that this provision did not constitute a specific limitation upon the exercise of the spending or taxing powers. 418 U.S. at 175, 94 S.Ct. at 2945. Similarly, in Frissell v. Rizzo, 597 F.2d 840, 850 (3d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), the Third Circuit held that "(i)n the wake of the Richardson holding the claim that the general First Amendment guarantees of free press and free speech fall within the class of specific limitations satisfying the Flast test is without merit."
 
 
 53
 We hold that the provisions of Art. IV, § 3, are not specific limitations upon the congressional taxing and spending power and, therefore, that plaintiffs have failed to satisfy the second nexus requirement of Flast v. Cohen. Thus, plaintiffs do not have standing as federal taxpayers to challenge the constitutionality of § 1701(a)(1) or (13).
 
 
 54
 Nor does plaintiffs' status as state taxpayers give them standing to challenge the federal retention and reimbursement policies of § 1701(a)(1) and (13). Even in the context of challenges to state statutes, state taxpayers seeking standing in federal court must show some "measurable appropriation or disbursement of ... funds occasioned solely by the activities complained of." Doremus v. Board of Education, 342 U.S. at 434, 72 S.Ct. at 397; Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). The provisions of § 1701(a)(1) and (13), however, are simply declarations of policy. They are not in themselves appropriations or disbursements of money.
 
 
 55
 In the instant context of a state taxpayer challenge to federal statutes, the policies of the standing doctrine demand that plaintiffs allege some injury which is more definite and individual than the higher state taxes allegedly suffered here. Apparently as a prudential matter,[21] the Supreme Court has held that "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Warth v. Seldin, 422 U.S. at 499, 95 S.Ct. at 2205; citing Schlesinger v. Reservists Committee to Stop the War; United States v. Richardson; Ex Parte Levitt, 302 U.S. at 634, 58 S.Ct. at 1. Accord, Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). Similarly, in Flast v. Cohen, the court noted that standing requirements exist so that courts will not be asked to adjudicate "generalized grievances about the conduct of government or the allocation of power in the Federal System." 392 U.S. at 106, 88 S.Ct. at 1956.
 
 
 56
 The increase in state taxes allegedly suffered by plaintiffs is at best a highly generalized injury. A great many federal statutes potentially affect the level of state taxes. Here, plaintiffs' interest in the effect of the retention and reimbursement policies on state taxes is shared in somewhat differing degrees by the taxpayers of all states which contain public lands. We hold that this interest is insufficient to give plaintiffs standing to challenge the constitutionality of § 1701(a)(1) and (13). We do not sit to pass judgment on congressional declarations of policy which affect plaintiffs only in an attenuated and generalized way. Plaintiffs must look to the legislative branch for redress of such generalized grievances.
 
 G. Article I, Section 8, Claim
 
 57
 The Act permits the Secretary to contract with local officials for law enforcement services on the public lands, and to provide law enforcement training so that the contractual responsibilities may be met. 43 U.S.C. § 1733(c)(1).[22] Section 1733(c)(2)[23] states that the Secretary may authorize federal personnel or appropriate local officials to carry out his law enforcement responsibilities, and provides for those officials to receive the training described in § 1733(c)(1). Section 1733(e)[24] allows the Secretary to establish a uniformed desert ranger force in the California Desert Conservation Area for the purposes of enforcing federal laws and regulations relating to the public lands.
 
 
 58
 Plaintiffs allege that these sections fall within the ambit of Art. I, § 8, cl. 12, of the Constitution, which grants Congress power "(t)o raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years." Plaintiffs apparently make the highly suspect assumption that the desert ranger force referred to in § 1733(e) and the law enforcement personnel referred to in § 1733(c) constitute "Armies" within the meaning of Art. I, § 8, cl. 12, and conclude that because the Act allegedly contains appropriations which are "unlimited," the Act runs afoul of the two year constitutional limitation on appropriations for armies.
 
 
 59
 The complaint fails to specify which sections of the Act contain these allegedly "unlimited appropriations." However, the Act does contain at least one appropriation authorization in § 1781(j),[25] which extends through four years and which is designated in part for a program of law enforcement in the California Desert Conservation Area under § 1781(h).
 
 
 60
 Thus, with regard to this claim, plaintiffs appear to have satisfied the literal terms of the Flast nexus requirements for taxpayer standing, inasmuch as they have challenged a congressional exercise of the spending power and have alleged that the Act violates the specific limitation on that power contained in Art. I, § 8, cl. 12.
 
 
 61
 Nonetheless, plaintiffs have failed to state a cognizable claim. It is clear that the Art. I, § 8, cl. 12, limitation on appropriations for "Armies" does not apply to every type of "armed force," as plaintiffs allege. For example, no such limitations are attached to the separate grants of power to Congress to provide and maintain a navy and to organize, arm, and discipline a militia. Art. I, § 8, cls. 13, 16.
 
 
 62
 The inclusion of the two year appropriations limitation in Art. IV, § 8, cl. 12, resulted from the concern of the framers of the Constitution that a standing army might be detrimental to liberty. See Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 268, 80 S.Ct. 297, 321, 4 L.Ed.2d 268 (1960); Prescott, Drafting the Federal Constitution 515-525 (1941); 5 Elliot's Debates 443-445. We perceive no equivalent danger from a ranger force or law enforcement personnel engaged in routine law enforcement activities on the federal lands, and conclude that they may not fairly be characterized as "Armies." Thus, Art. I, § 8, cl. 12, is inapplicable to the challenged sections of the Act, and plaintiffs' allegations do not state a claim upon which relief can be granted.[26]
 
 V. CONCLUSION
 
 63
 The allegations in support of plaintiffs' various claims are either insufficient to satisfy the justiciability and standing requirements or inadequate to state a claim upon which relief can be granted. We, therefore, affirm the District Court's dismissal of the complaint with prejudice.
 
 
 64
 AFFIRMED.
 
 
 
 *
 We substitute and name James G. Watt, the successor to the original defendant Cecil Andrus, as the Secretary of the Interior, per Fed.R.App.P. 43
 
 
 **
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Pub.L.No. 94-579
 
 
 [2]
 Plaintiffs specifically challenge the constitutionality of 43 U.S.C. §§ 1701(a)(1), 1701(a)(13), 1732(b), 1733(a), (c), (g), and (e), 1734(b), 1735(a), 1740, 1744, 1761-1764, and 1781(c)
 
 
 [3]
 Plaintiffs Western Mining Council and its chapters make only one claim, discussed in Part IV.B., infra, that the Act injures them independently from the individual plaintiffs. With respect to all other claims asserted, the standing of these trade associations hinges upon the standing of their members. See, e. g., Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975)
 
 
 [4]
 43 U.S.C. § 1732(b) provides, in relevant part: "In managing the public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands."
 
 
 [5]
 43 U.S.C. § 1733(a) provides, in part:
 "The Secretary shall issue regulations necessary to implement the provisions of this Act with respect to the management, use, and protection of the public lands, including the property located thereon. Any person who knowingly and willfully violates any such regulation which is lawfully issued pursuant to this Act shall be fined no more than $1,000 or imprisoned no more than twelve months, or both. Any person charged with a violation of such regulation may be tried and sentenced by any United States magistrate designated for that purpose by the court by which he was appointed...."
 
 
 [6]
 43 U.S.C. § 1733(g) provides:
 "The use, occupancy, or development of any portion of the public lands contrary to any regulation of the Secretary or other responsible authority, or contrary to any order issued pursuant to any such regulation, is unlawful and prohibited."
 
 
 [7]
 43 U.S.C. § 1740 provides, in part:
 "The Secretary, with respect to the public lands, shall promulgate rules and regulations to carry out the purposes of this Act and of other laws applicable to the public lands, and the Secretary of Agriculture, with respect to lands within the National Forest System, shall promulgate rules and regulations to carry out the purposes of this Act.... Prior to the promulgation of such rules and regulations, such lands shall be administered under existing rules and regulations concerning such lands to the extent practical."
 
 
 [8]
 43 U.S.C. § 1740 states, in relevant part:
 "The promulgation of such rules and regulations shall be governed by the provisions of chapter 5 of title 5 (of the United States Code), without regard to section 553(a)(2)."
 
 
 [9]
 Because plaintiffs' complaint is extremely disjointed, conclusory, and vague, it is not possible to say with certainty which allegations are intended to support which constitutional attacks on the Act. Neither the courts nor the plaintiffs are well served by a complaint drafted in such a manner
 
 
 [10]
 The Mining Law of 1872 is now codified at 30 U.S.C. §§ 22-24, 26-28, 29, 30, 33-35, 37, 39-42, and 47
 
 
 [11]
 Art. I, § 10, of the Constitution commands: "No State shall ... make any ... Law impairing the Obligation of Contracts ...." Although this clause does not, by its terms, apply to the federal government, the due process clause of the Fifth Amendment has been held in some instances to have a similar effect. See, e. g., Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); Shoshone Tribe of Indians v. United States, 299 U.S. 476, 497, 57 S.Ct. 244, 251, 81 L.Ed. 360 (1937); but see Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948)
 
 
 [12]
 We do not reach the questions of whether plaintiffs do, in fact, have "contracts" with the Government under the Mining Law of 1872, or, if so, whether the Act would impose impermissible burdens on such contracts if applied to plaintiffs
 
 
 [13]
 43 U.S.C. § 1744(a) requires owners of unpatented mining claims to file either a notice of intention to hold the mining claim, an affidavit of assessment work, or a detailed report provided in 30 U.S.C. § 28-1, in the office where the location notice or certificate is recorded. This section also requires that a copy of such instrument be filed in the office of Bureau of Land Management, designated by the Secretary with a description of the location of the mining claim. For claims located before the effective date of the Act, October 21, 1976, these instruments were required to be filed by October 21, 1979, and prior to December 31 of each year thereafter. For claims located after October 21, 1976, the claims must be recorded prior to December 31 of each year following the calendar year in which the claim was located
 43 U.S.C. § 1744(b) sets forth additional requirements that a copy of the official record of the notice of location or certificate of location be filed in the office of the Bureau of Land Management designated by the Secretary. This is a one time filing which was required to be made by October 21, 1979 for those claims located before the effective date of the Act, and within ninety days after the location of claims occurring after October 21, 1976.
 
 
 [14]
 43 U.S.C. § 1744(c) limits the applicability of the conclusive presumption of abandonment for failure to file by providing that "it shall not be considered a failure to file if the instrument is defective or not timely filed for record under other Federal laws permitting filing or recording thereof, or if the instrument is filed ... on behalf of some but not all of the owners of the mining claim...."
 
 
 [15]
 The fact that the application of the § 1744(c) presumption of abandonment for failure to file is nondiscretionary distinguishes this case from Jensen v. National Marine Fisheries Service (NOAA), 512 F.2d 1189, 1191 (9th Cir. 1975). In that case, we held that the mere existence of statutes delegating power to the President does not suffice to create a "case or controversy" where there is no actual injury alleged and the only threatened injury consists of the "mere possibility" of prosecution. Here the mandatory application of the § 1744(c) presumption of abandonment upon failure to comply with § 1744(a) and (b) combined with plaintiffs' unwillingness to comply renders the threatened injury highly probable
 
 
 [16]
 The finding of standing for the individual plaintiffs permits us to reach the question of whether the allegations are otherwise sufficient to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Because we conclude that they are not, we need not reach the question of whether plaintiffs Western Mining Council and its chapters also have standing to assert the same claim
 
 
 [17]
 See also Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)
 
 
 [18]
 We venture no opinion as to notice requirements or other questions which may arise in connection with any particular application or enforcement of these provisions. Plaintiffs have challenged a regulation concerning notice but lack standing to pursue this attack at this time. See Part IV.E., infra
 
 
 [19]
 See 43 C.F.R. §§ 3833.1-2 and 3833.1-3 (1979)
 
 
 [20]
 Art. IV, § 3, of the Constitution provides:
 "New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of two or more States, or parts of States, without the Consent of the Legislatures of the States concerned as well as of the Congress.
 "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State."
 
 
 [21]
 In City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 235 (9th Cir.), cert. denied, --- U.S. ----, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980), this Court noted that it is not entirely clear whether the "abstract injury" and taxpayer standing bars are prudential or constitutional, although more recent decisions have referred to them as prudential. See, e. g., Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)
 
 
 [22]
 43 U.S.C. § 1733(c)(1) provides:
 "When the Secretary determines that assistance is necessary in enforcing Federal laws and regulations relating to the public lands or their resources he shall offer a contract to appropriate local officials having law enforcement authority within their respective jurisdictions with the view of achieving maximum feasible reliance upon local law enforcement officials in enforcing such laws and regulations. The Secretary shall negotiate on reasonable terms with such officials who have authority to enter into such contracts to enforce such Federal laws and regulations. In the performance of their duties under such contracts such officials and their agents are authorized to carry firearms; execute and serve any warrant or other process issued by a court or officer of competent jurisdiction; make arrests without warrant or process for a misdemeanor he has reasonable grounds to believe is being committed in his presence or view, or for a felony if he has reasonable grounds to believe that the person to be arrested has committed or is committing such felony; search without warrant or process any person, place, or conveyance according to any Federal law or rule of law; and seize without warrant or process any evidentiary item as provided by Federal law. The Secretary shall provide such law enforcement training as he deems necessary in order to carry out the contracted for responsibilities. While exercising the powers and authorities provided by such contract pursuant to this section, such law enforcement officials and their agents shall have all the immunities of Federal law enforcement officials."
 
 
 [23]
 43 U.S.C. § 1733(c)(2) provides:
 "The Secretary may authorize Federal personnel or appropriate local officials to carry out his law enforcement responsibilities with respect to the public lands and their resources. Such designated personnel shall receive the training and have the responsibilities and authority provided for in paragraph (1) of this subsection."
 
 
 [24]
 43 U.S.C. § 1733(e) provides:
 "Nothing in this section shall prevent the Secretary from promptly establishing a uniformed desert ranger force in the California Desert Conservation Area established pursuant to section 1781 of this title for the purpose of enforcing Federal laws and regulations relating to the public lands and resources managed by him in such area. The officers and members of such ranger force shall have the same responsibilities and authority as provided for in paragraph (1) of subsection (c) of this section."
 
 
 [25]
 43 U.S.C. § 1781(j) provides:
 "There are authorized to be appropriated for fiscal years 1977 through 1981 not to exceed $40,000,000 for the purpose of this section, such amount to remain available until expended."
 
 
 [26]
 We need not determine the standing of plaintiffs Western Mining Council and its chapters to assert this claim. See n. 16, supra