Paul McMICHAEL and Joseph A. Nichelini, Plaintiffs-Appellants,

v.

COUNTY OF NAPA and Napa County Board of Supervisors, Defendants-Appellees.

No. 81–4582.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1982.

Decided June 16, 1983.

Barbara B. Parrish, C. Blaine Morley, Joseph M. Gughemetti, Morley & Gughemetti, Palo Alto, Cal., for plaintiffs-appellants.

Marc B. Mihaly, Shute, Mihaly & Weinberger, San Francisco, Cal., for defendants-appellees.

Before WALLACE, KENNEDY, and NELSON, Circuit Judges.

WALLACE, Circuit Judge:

Paul McMichael and Joseph A. Nichelini (McMichael) brought suit to challenge the countywide vote on Initiative Measure A, a slow-growth ordinance applying only to the unincorporated area of Napa County, California. This is an appeal from the district judge's order dismissing McMichael's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court's jurisdiction was based on 28 U.S.C. § 1331. Our jurisdiction rests on 28 U.S.C. § 1291. We affirm the dismissal, but for a different reason than that stated by the district court. We find that McMichael lacks standing.

I

McMichael resides in the unincorporated area of Napa County, California. In a countywide election on November 4, 1980, he voted against the enactment of Initiative Measure A, an ordinance limiting the number of new housing units permitted each year in the unincorporated area of the county and providing that fifteen percent of the units allowed be allotted to persons with average or below average income. The County of Napa is made up of an unincorporated area and four incorporated cities: Calistoga, Napa, Yountville, and St. Helena. A certified statement filed by the county clerk and elections supervisor of Napa County indicates that Initiative Measure A passed by a total vote of 54 percent in favor and 46 percent against and that it received a majority of votes in each of the four cities as well as in the unincorporated area. In the unincorporated area the vote was 7,365 (53 percent) in favor and 6,518 (47 percent) opposed.

McMichael brought suit in the district court seeking injunctive and declaratory relief on the ground that passage of Measure A by a countywide vote unconstitutionally diluted the votes of residents of the unincorporated area. McMichael argues that since Measure A applies only to the unincorporated area of Napa County, the vote should have been restricted to residents of the unincorporated area.[1] He contends that the countywide vote on Measure A did not properly recognize the distinct voter interests of residents of the unincorporated area and thereby deprived them of the equal protection of the laws guaranteed by the fourteenth amendment.

II

Standing is a threshold question in every case before a federal court. *Warth v. Seldin*, 422 U.S. 490, 517–18, 95 S.Ct. 2197, 2214–2215, 45 L.Ed.2d 343 (1975); *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 233 (9th Cir.), *cert. denied*, 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980). Before the judicial process may be invoked, a plaintiff must "show that the facts alleged present the court with a 'case or controversy' in the constitutional sense and that [he] is a proper plaintiff to raise the issues sought to be litigated." *Linda R.S. v. Richard D.*, 410 U.S. 614, 616, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). A party seeking to invoke the court's authority must demonstrate "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends ...." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

The question of whether the plaintiff has standing involves both constitutional and prudential limitations. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99

---

1. McMichael argues in the alternative that the votes of residents of the unincorporated area should have carried more weight than those of city residents.

S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Warth v. Seldin, supra,* 422 U.S. at 498, 95 S.Ct. at 2204. The constitutional limitations of article III involve three separate but interrelated components: first, a "distinct and palpable" injury to the plaintiff, *id.* at 501, 95 S.Ct. at 2206, be it "threatened or actual," *Linda R.S. v. Richard D., supra,* 410 U.S. at 617, 93 S.Ct. at 1148; second, a "fairly traceable causal connection" between that injury and the challenged conduct of the defendant, *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) *(Duke Power); Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–1926, 48 L.Ed.2d 450 (1976) *(Simon);* and third, a "substantial likelihood" that the relief requested will redress or prevent the injury. *Duke Power, supra,* 438 U.S. at 75 n. 20, 98 S.Ct. at 2631 n. 20; *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 262, 264, 97 S.Ct. 555, 561, 563, 50 L.Ed.2d 450 (1977); *Simon, supra,* 426 U.S. at 38, 96 S.Ct. at 1924; *Gonzales v. Gorsuch,* 688 F.2d 1263, 1267 (9th Cir.1982).

To date, at least three prudential limitations on standing have been recognized: first, the plaintiff must assert his own rights and "cannot rest his claim to relief on the legal rights or interests of third parties," *Warth v. Seldin, supra,* 422 U.S. at 499, 95 S.Ct. at 2205; second, "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III," *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) *(Valley Forge),* the plaintiff's injury must not be "shared in substantially equal measure by all or a large class of citizens"—if so, it represents a "generalized grievance" not normally appropriate for a judicial resolution, *Warth v. Seldin, supra,* 422 U.S. at 499, 95 S.Ct. at 2205; and third, the plaintiff's interest must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *see Valley Forge, supra,* 454 U.S. at 475, 102 S.Ct. at 760; *Gladstone, Realtors v. Village of Bellwood, supra,* 441 U.S. at 100 n. 6, 99 S.Ct. at 1608 n. 6; *State of California v. Block,* 690 F.2d 753, 776 (9th Cir. 1982); *City of Davis v. Coleman,* 521 F.2d 661, 670, 672 (9th Cir.1975).

The relation between the constitutional and prudential aspects of standing has been described as follows:

> Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered "a distinct and palpable injury to himself," that is likely to be redressed if the requested relief is granted.

*Gladstone, Realtors v. Village of Bellwood, supra,* 441 U.S. at 100, 99 S.Ct. at 1608 (citations omitted). McMichael has not pointed to any congressional grant of standing intended to abrogate prudential standing rules. We are therefore limited by both constitutional and prudential principles.

### III

■ The County of Napa, in arguing that McMichael lacks standing, defines his injury as the passage of Measure A. Because the initiative measure would have passed even if voting had been restricted to residents of the unincorporated area, the County argues that McMichael has not been harmed as a result of the so-called vote dilution.

McMichael contends that his injury was the denial of his "right to cast an undiluted vote." He argues that when disfranchisement or dilution of the franchise is alleged, it is not necessary to show that the results of the election would have been otherwise if the plaintiff had been permitted to cast an undiluted vote.

The passage of Initiative Measure A cannot qualify as the requisite injury because, even assuming that McMichael's interests

were adversely affected by passage of the ordinance, this injury cannot be said to have been caused by the challenged action (holding the vote on a countywide basis) because the measure was approved by a majority of voters in the unincorporated area. Therefore, if McMichael has suffered some injury sufficient to satisfy the requisites of article III, such injury must, as McMichael argues, consist in the denial of his so-called "right to cast an undiluted vote."

We need not reach the question whether an alleged vote dilution must, like outright disfranchisement, be considered sufficient injury in and of itself to grant appellants article III standing. As a federal court, we should avoid deciding this constitutional question when it is possible to dispose of the case on some other ground. *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 630 (9th Cir.1982). Because the question whether McMichael has standing can be decided on the basis of one of the prudential limitations on standing, we do not reach the article III question.

The prudential rules of standing, though closely related to article III concerns, are "essentially matters of judicial self-governance." *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2205. "Without such limitations ... the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.*

One of the prudential limitations on standing is that the plaintiff's interest must be within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Gladstone, Realtors v. Village of Bellwood, supra,* 441 U.S. at 100 n. 6, 99 S.Ct. at 1608 n. 6; *Association of Data Processing Service Organizations, Inc. v. Camp, supra,* 397 U.S. at 153, 90 S.Ct. at 829; *see State of California v. Block, supra,* 690 F.2d at 776; *City of Davis v. Coleman, supra,* 521 F.2d at 670, 672. This limitation serves to prevent the courts from considering the merits of legal

problems that may be real but yet are too removed and abstract to warrant judicial consideration. To determine whether this limitation is applicable here, we begin by analyzing the nature of the right of which McMichael was allegedly deprived. As the Supreme Court explained in *Warth v. Seldin, supra:*

> Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. ... [T]he source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

422 U.S. at 500, 95 S.Ct. at 2206 (citation omitted).

McMichael attacks the validity of Measure A on the ground that its passage by a countywide vote violated the equal protection clause of the fourteenth amendment. It is significant that McMichael challenges the constitutionality of the countywide vote only as it pertains to this particular initiative. No general challenge is made to an ongoing voting structure; McMichael has expressly limited his suit to "a challenge of one ordinance invalidly enacted." Moreover, he has not alleged that the outcome of the election would have differed had the vote been restricted to residents of the unincorporated area or that it would differ if so restricted in a new election. Instead, McMichael argues that "the failure of the County to limit the vote on Measure A to the residents of the unincorporated area unconstitutionally dilutes or debases the vote thereby rendering the entire election defective."

McMichael's claimed "right to cast an undiluted vote" is not a personal, individual

right in the same sense as the right to vote. Rather, it is enmeshed with a claim allegedly arising under the equal protection clause of the fourteenth amendment. He contends that the inclusion of city residents in the vote on Measure A involves an impermissible classification. Thus, McMichael's allegation that he has been denied the "right to cast an undiluted vote" is a legal conclusion premised on an underlying equal protection violation.

To determine whether McMichael has prudential standing, we must decide whether his interests are within the zone of interests to be protected by the equal protection clause in this case. We conclude that they are not. Although the parties differ on the appropriate level of scrutiny,[2] they agree, as they must, that the equal protection clause works here essentially to prevent a largely unaffected group of voters from controlling the outcome on an issue primarily affecting another group of voters. To prevent such a dilution of votes, the equal protection clause requires, at a minimum, some rational basis[3] for the classification that includes certain voters and excludes others. However, even assuming an unconstitutional classification, when the primarily affected group votes the same way as the overall group, the injury which the equal protection guarantee was designed to prevent has not occurred. We decline to embrace a view that would allow a plaintiff to establish standing by merely alleging the denial of a "right" based on a constitutional guarantee when the underlying harm the constitutional guarantee was intended to prevent has not occurred. Whatever harm McMichael may have suffered as a result of the countywide vote, it is not sufficient to invoke the jurisdiction of the federal courts. Thus, McMichael has not demonstrated that his interest is "arguably within the zone of interests to be protected or regulated" by the equal protection clause in this case.

We refuse to engage in an abstract discussion of whether the vote on Measure A should have been restricted to the residents of the unincorporated area when the measure was approved by majorities in both the unincorporated area and the county as a whole.

To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing "government by injunction." *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 222, 94 S.Ct. 2925, 2932–33, 41 L.Ed.2d 706 (1974). To our knowledge, the constitutional provision on which McMichael's claim rests has never "properly [been] understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206. McMichael raises a legitimate question of constitutional theory, and "constitutional principle divorced from concrete injury may suffice to generate a spirited legislative or public debate, but [it] will not support a federal case." *City of South Lake Tahoe v. California Tahoe Regional Planning Agency, supra,* 625 F.2d at 238. Consequently, we conclude that McMichael does not have standing.

The case of *Baker v. Carr, supra,* cited by McMichael, is distinguished because of the nature of the plaintiffs' claims. In that case, the plaintiffs sought to invalidate, on equal protection grounds, the apportionment of voting districts for state legislative offices. Because the challenge in that case was to a voting "structure" which allegedly caused an unconstitutional debasement of the plaintiffs' votes every time an election was held, the asserted injury was concrete and ongoing. In contrast, McMichael has

---

**2.** McMichael argues that strict scrutiny should apply; the county argues that only a rational basis need be shown.

**3.** Because we do not reach the merits of this case, we need not decide the level of scrutiny by which the countywide vote would be examined.

expressly limited his suit to a challenge of "the validity of one ordinance invalidly enacted." After-the-fact review of a single election which has not caused any practical injury is of a very different nature than the review of an allegedly unconstitutional legislative apportionment plan.

In reaching our decision, we stress the narrowness of our holding. Standing must be determined on a case-by-case basis. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531, at 184 (1975). We hold only that McMichael does not have standing to challenge the enactment of Measure A by a countywide vote on the ground that the vote should have been restricted to the voters of the unincorporated area when the measure was approved by majorities in both the unincorporated area and the city as a whole and when it has not been alleged that the outcome of the election would have differed if the vote had been so restricted or that it would differ if so restricted in a new election. Although we could have used a similar analysis to decide the article III standing issue, prudence dictates that we decide the standing on prudential grounds.

Although the district court dismissed the action for a different reason, the ultimate judgment of dismissal was correct.[4] We may affirm on any ground fairly presented in the record. *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957).

AFFIRMED.

KENNEDY, Circuit Judge, concurring:

I agree the suit must be dismissed, but on a ground different from a lack of standing. The suit should be dismissed because it fails to state a claim upon which the relief sought can be granted.

I respectfully suggest the opinion for the court subverts the usual standing analysis and in effect reaches the merits, though it disclaims doing so. The zone of interest requirement is intended to bar suits by persons who, although affected by the defendant's transgression of a certain statutory or constitutional norm, are not its intended beneficiaries. The requirement is not meant to bar suits, for lack of standing, by one who simply cannot prove that the statutory or constitutional norm invoked has been transgressed.

Judge Wallace in effect says that the equal protection clause is not violated because there is no right to cast an undiluted vote if the dilution does not affect the election outcome. This is not a valid standing argument. If it were, almost any dispute becomes a standing case when the plaintiff loses. In addition, it improperly suggests that vote dilution causes no harm unless an election outcome is necessarily affected. That premise is doubtful, for voting dilution may, in some cases, cause such severe disenfranchisement that equitable relief will be justified regardless of outcome. We should not, in this case, flatly reject that possibility.

I would adopt a different rationale. The plaintiff in an election such as Napa's might complain of two kinds of injuries. First, he could say the improper election procedure altered the outcome. McMichael fails on this ground, for reasons fully explained in Judge Wallace's opinion. Second, he could say that the improper election procedure, whatever its effect on the outcome, forces participation in a constitutionally defective election process. The appellant does have standing to make this argument. The reason we must dismiss nevertheless is that the alleged defect will not support the relief he seeks in the circumstances of this case.

Federal courts will enter orders to invalidate state election results where voters have suffered an unconstitutional deprivation of the opportunity to vote even when it is not clear that the outcome would have been affected, but such relief has been reserved for instances of willful or severe violations of established constitutional norms. *See Griffin v. Burns,* 570 F.2d 1065, 1080 (1st Cir.1978). The present case is not

---

4. McMichael also raises objections to Initiative Measure A on the basis of state law. Because none of the state law claims were included in the complaint, we need not consider them.

in that category. Election standards similar to those challenged here have not been held invalid in other cases, and, in fact, may be required. *See Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). Without deciding *Kramer's* applicability, I would hold that the election result cannot be invalidated on the showing made here.

Dismissal of the suit to invalidate the ordinance is further indicated when it is noted that the appellant failed to challenge the election before it was held, and that he has not shown it was impracticable to do so. As Judge Wallace's opinion correctly points out, moreover, appellant has not challenged the election system generally but seeks solely the invalidation of the ordinance, which would have been passed in any event.

I would dismiss the action for failure to state a claim on which relief can be granted, without bending the standing doctrine. To do so may prejudice future, justiciable claims involving the right to vote.