**HONG KONG SUPERMARKET,**
**Plaintiff-Appellant,**

**v.**

**Kenneth KIZER; Jack Metz; Helen Gerig; State of California; the Secretary of Agriculture of the United States of America, Defendants-Appellees.**

**No. 86–6289.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 1987.

Decided Oct. 22, 1987.

Fred M. Blum, Los Angeles, Cal., for plaintiff-appellant.

Dianne Bardsley and Brian C. Kipnis, Los Angeles, Cal., for defendants-appellees.

Before ALARCON, NELSON and O'SCANNLAIN, Circuit Judges.

NELSON, Circuit Judge:

Hong Kong Supermarket ("Hong Kong") brought suit against the Secretary of Agriculture ("Secretary"), the State of California ("State"), and certain state agency personnel, to enjoin the allegedly discriminato-

ry administration of the Special Food Program for Women, Infants and Children ("WIC"), 42 U.S.C. §§ 1786–1789 (1982 & West Supp. 1987). Hong Kong claims that the high incidence of lactose intolerance and malabsorption among Southeast Asians prevents their use of WIC milk-product coupons, effectively reducing their meaningful access to the WIC program. Hong Kong contends that the alleged failure of the Secretary and State to adjust the selection of eligible food products to cultural differences among races violates its clientele's right to equal protection.

The district court dismissed Hong Kong's complaint for lack of standing. We note jurisdiction under 28 U.S.C. § 1291 and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The WIC program was enacted by Congress in order to provide free supplemental foods to meet the specific nutritional needs of pregnant, postpartum, and breastfeeding women, and infants and children of low-income families determined to be "at nutritional risk." 42 U.S.C. § 1786(a), (c)(1), (d)(1). The program is designed to supplement the food stamp program, and to provide nutrition education to prevent health problems and improve the health of its participants during critical periods of growth and development. *Id.* § 1786(a), (c)(1), (e). WIC authorizes the Secretary to administer the program. *Id.* § 1786(c). The Secretary implements the program by awarding federal grants-in-aid to state agencies. *Id.* § 1786(f)(1). Only those foods that the Secretary prescribes may be distributed by the participating state agencies. *Id.* § 1786(b)(14); *see also* 7 C.F.R. § 246.10 (1987) (listing prescribed foods and recommended food packages including milk, cheese, eggs, cereals, fruit juices, and legumes). The statute, however, permits state agencies to submit proposals to substitute different, nutritionally equivalent foods in order to allow for varying cultural eating patterns, subject to the approval of the Secretary. 42 U.S.C. § 1786(b)(14); 7 C.F.R. § 246.10(e).

California currently operates a federally approved WIC program, governed by the California Health & Safety Code §§ 311–319 (West Supp. 1987). Under the state program, eligible recipients receive "nutrition coupons," with a specific type and quantity of food product printed on the face of each coupon. Cal. Health & Safety Code §§ 311.5(d), 312.5. The California Department of Health Services enters into contracts with retail food vendors who are then authorized to exchange the WIC coupons only for the specified food products, and to redeem the coupons it receives from customers for cash from the state administrators of the WIC program. *Id.* §§ 314, 314.5. The vendors are subject to audits and investigations to monitor their compliance with the WIC program and to sanctions for violating the statutory rules. *Id.* §§ 316–318.

Hong Kong, an authorized vendor under the WIC program, is a retail supermarket in the Chinatown area of Los Angeles that caters primarily to a Southeast Asian clientele. Between May 1982 and April 1983, Hong Kong redeemed WIC coupons for a total sum of $1,034,984. On December 19, 1983, the State notified Hong Kong that, pursuant to an audit, Hong Kong had to reimburse the State in the amount of $909,671 for improperly redeeming WIC coupons for items other than those specified on the face of the coupons. Hong Kong requested an administrative hearing, which was held on June 12, 1985. Hong Kong's complaint indicates that an administrative law judge submitted a proposed decision finding that the state WIC program regulations governing vendor hearings were not promulgated in accordance with the federal regulations or relevant California law. The complaint does not indicate what conclusion, if any, was reached regarding Hong Kong's liability for the monetary penalty. The proposed decision is not final, and is awaiting review by the Director of the Department of Health Services of California, pending the outcome of the present lawsuit.

Hong Kong initially filed suit in state court against the state defendants on June

11, 1985, one day prior to the administrative hearing. Hong Kong's request for injunctive relief against the allegedly discriminatory administration of the WIC program was denied. The State removed the action to district court, where the court ordered Hong Kong to amend its complaint to join the Secretary pursuant to Fed.R.Civ. P. 19. Hong Kong accordingly filed a first amended complaint alleging that the federal regulations and state administration of the WIC program invidiously discriminated against Southeast Asians and Indochinese refugees by basing the selection of supplemental foods on a conventional American diet, without taking into account the diverse cultural eating habits and lactose intolerance of these groups. Therefore, Hong Kong does not challenge the WIC statute on its face, but rather challenges its allegedly discriminatory implementation.

Hong Kong requests a judicial declaration of the discriminatory impact of the regulations and an injunction prohibiting state personnel from administering the WIC program—*i.e.*, precluding the issuance of any WIC coupons and the expenditure of any state funds on the WIC program or on vendor hearings, especially its own pending administrative appeal—until the regulations are amended to assure the constitutional implementation of the program. The federal and state defendants filed motions seeking dismissal of the action for lack of standing, or alternatively for summary judgment.

On July 15, 1986, the district court dismissed Hong Kong's complaint for lack of standing. The court found that Hong Kong lacked standing under article III of the United States Constitution and also lacked prudential standing, having failed to demonstrate that it is "a suitable champion of the nutritional needs of the Southeast Asians it seeks to represent." Hong Kong filed a timely appeal.

## ISSUE PRESENTED

Whether Hong Kong lacks standing to assert the claims of its WIC program customers.

## STANDARD OF REVIEW

The question whether a party lacks standing is a legal issue subject to de novo review. *Bruce v. United States,* 759 F.2d 755, 758 (9th Cir.1985). In addition, in ruling on a Fed.R.Civ.P. 12(b)(6) motion to dismiss for want of standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *accord Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).[1] We cannot, however, interpret the complaint

---

**1.** In its reply brief, Hong Kong contends that the district court's consideration of matters extraneous to the pleadings was reversible error on a motion to dismiss. It points out that defendants inappropriately introduced, in their reply brief to the points and authorities in the district court, declarations of undercover agents who purchased a variety of unapproved items in exchange for WIC coupons at the Hong Kong supermarket. They contend that they had no opportunity to respond to this evidence and that the court should have excluded it in ruling on a motion to dismiss.

Hong Kong raises this argument for the first time in its appellate reply brief. Generally, matters raised for the first time in an appellant's reply brief may not be considered on appeal. *Ellingson v. Burlington N., Inc.,* 653 F.2d 1327, 1331–32 (9th Cir.1981). However, because we have held that it is reversible error for the

district court to look beyond the complaint in a Fed.R.Civ.P. 12(b)(6) motion to dismiss, we will respond to Hong Kong's argument. We conclude that reversal and remand on the basis of Hong Kong's claimed error are not required.

First, the district court's reference to the declarations was expressly prefaced by the phrase "while not necessary to the Court's decision." Since the remaining comments were clearly dicta, there is no reversible error. Second, to the extent that the district court may have relied improperly on matters outside the pleadings, the interests of judicial economy would not be served by remanding a case for a purely legal determination, such as standing, that we are fully competent to make by confining our review to the complaint. *Tele-Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1335 (D.C.Cir.1985).

"so liberally as to extend our jurisdiction beyond its constitutional limits." *Western Mining Council,* 643 F.2d at 624.

## DISCUSSION

The determination whether a plaintiff has standing involves both constitutional and prudential limitations. *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir.1983). The constitutional limitations of article III contain three components: (1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the alleged injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury. *Id.* at 1270.

The prudential limitations require the plaintiff to (1) assert his own rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question. *Id.* Failure to satisfy any of these constitutional or prudential requirements defeats standing. *Fors v. Lehman,* 741 F.2d 1130, 1132 (9th Cir.1984).

The district court found that Hong Kong lacked both article III and prudential standing. In view of the basic policy of federal courts against unnecessary determination of constitutional issues, we should avoid the article III question when standing can be decided on the basis of one of the prudential limitations. *McMichael,* 709 F.2d at 1271. Because we conclude that Hong Kong lacks standing under the first prudential limitation, we need not address the article III question. *See id.* at 1271–73 (affirming district court's dismissal of action for lack of standing solely on the basis of plaintiff's failure to satisfy the zone-of-interests prudential consideration); *see also Fors,* 741 F.2d at 1134 (same).

Prudential limitations require that parties assert their own rights rather than rely on the rights or interests of third parties. *McMichael,* 709 F.2d at 1270. Federal courts have traditionally been reluctant to grant third-party standing. *Darring v. Kincheloe,* 783 F.2d 874, 877 (9th Cir.1986). Although certain exceptions to the rule against third-party standing have been recognized in cases involving vendors (*e.g., Craig v. Boren,* 429 U.S. 190, 193–95, 97 S.Ct. 451, 454–55, 50 L.Ed.2d 397 (1976) (vendor granted standing to challenge statute prohibiting sale of beer to male customers between 18 and 21 years old)) or providers of services (*e.g., Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973) (physicians granted standing to challenge abortion statute)), the Supreme Court has noted in such cases that the relationship between the litigant and the third parties whose rights he asserts "was not simply the fortuitous connection between a vendor and potential vendees, but the relationship between one who acted to protect the rights of a minority and the minority itself." *Eisenstadt v. Baird,* 405 U.S. 438, 445, 92 S.Ct. 1029, 1034, 31 L.Ed. 2d 349 (1972). Hong Kong's counsel conceded at oral argument that Hong Kong cannot rely on its vendor status as a per se entitlement to standing to assert its vendee's rights. It must be able to convince the court that it would be as effective a proponent of its customers' rights as they would be. *Singleton v. Wulff,* 428 U.S. 106, 114–15, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976) (plurality); *see also Eisenstadt,* 405 U.S. at 445, 92 S.Ct. at 1034 (distributor of contraceptives who acted as an advocate of rights of those desirous of obtaining the product had third-party standing); *Barrows v. Jackson,* 346 U.S. 249, 254–60, 73 S.Ct. 1031, 1033–34, 97 L.Ed. 1586 (1953) (seller of land who acted as an advocate of minority rights had standing to defend against racially restrictive covenant).

We turn to Hong Kong's complaint to guide our assessment whether Hong Kong is a suitable representative of the constitutional rights of its customers. Hong Kong alleges that its economic interests have been impaired by the need to defend against administrative sanctions for violating the WIC rules, the potential liability for the $909,671 fine, and the possible suspen-

sion of its WIC license. As a remedy for its injury and for the allegedly discriminatory implementation of the WIC program, the complaint requests that the court enjoin the administration of the WIC program, including the administrative action against Hong Kong, and issue a declaration that the program has been administered in a discriminatory manner.

Hong Kong's alleged objective to remedy the discriminatory implementation of the WIC program can be achieved by much less drastic measures than bringing the entire program to a halt. The lactose-intolerant participants could derive some benefit from the non-dairy foods in the WIC program. Hong Kong now concedes that the remedy is overbroad. But Hong Kong's concession was made only after the defendants accused Hong Kong of placing its own interests in avoiding administrative sanctions above those of the WIC participants.

Hong Kong responds that the inappropriateness of its remedy can be corrected by amending its complaint. It would like to change the complaint to request an injunction "ordering defendants to take into account the cultural eating habits and specific medical traits of the Southeast Asian population and prescribe new food packages for WIC." We believe that Hong Kong's attempt to recast its remedy so that the anticipated outcome of the lawsuit appears mutually beneficial to itself and its customers trivializes our concern with confining standing to effective proponents of third-party rights. Mutual interdependence of interests cannot be established by post hoc editing. Furthermore, we must review a Rule 12(b)(6) dismissal on the face of the complaint alone. *Tele-Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334–35 (D.C.Cir.1985). As the district court observed: "The broad injunctive relief initially sought by the plaintiff belies its stated concern that these people receive suitable foods under the voucher program."

The district court's reasoning persuasively suggests that Hong Kong's willingness to enjoin the WIC program was probative of a conflict, rather than a congruence, of interests, thereby undermining Hong Kong's claim to be a suitable champion of its customers' rights. Although Hong Kong's economic interests in the outcome of the litigation do not preclude third-party standing (the vendor in *Craig,* for example, certainly had a financial stake in the lawsuit's outcome), the manner in which it has litigated the suit thus far casts considerable doubt on Hong Kong's competence or incentive "to frame the issues and present them with the necessary adversarial zeal." *Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) (discussing third-party standing). In addition, the goal of the litigants in cases such as *Craig* and *Eisenstadt* was in harmony with that of the absent third parties, notwithstanding the litigants' pecuniary interests. We therefore focus not on Hong Kong's economic motives in bringing this suit, but on the outcome it seeks on the face of its complaint, and conclude that its interests and those of the nutritionally high risk WIC recipients are not "inextricably" intertwined. *See Singleton,* 428 U.S. at 114–15, 96 S.Ct. at 2874–75; *Schnapper v. Foley,* 667 F.2d 102, 113 (D.C.Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed. 2d 661 (1982).

Hong Kong relies heavily on *Craig* for the principle that vendors can assert the rights of vendees. But *Craig* is distinguishable because standing was contested for the first time on appeal, following a vigorous and cogent presentation of the issues. *Craig,* 429 U.S. at 193–94, 97 S.Ct. at 454–55. The Court therefore based much of its prudential analysis on the vendor's effective advocacy and on the efficiency of permitting the suit, already at the Supreme Court level, to continue rather than awaiting a new challenge by third parties that "would impermissibly foster repetitive and time-consuming litigation." *Id.* at 194, 97 S.Ct. at 455.[2] *Craig* is there-

---

**2.** On appeal, Hong Kong raises the additional argument that a suit brought directly by the Southeast Asian WIC participants may be im-

practical, if not impossible. The implication is that if it is not permitted to assert the WIC participants' rights, perhaps no one will. In its

fore not controlling when, as here, we are unconvinced that the litigants are appropriate champions of third parties' rights.

Because standing must be determined on a case-by-case basis, *McMichael,* 709 F.2d at 1273, we need only determine that, on the facts of this case, Hong Kong's demonstrated lack of suitability as a proponent of its customers' rights precludes a grant of third-party standing.

### CONCLUSION

We affirm the district court's judgment of dismissal solely on the basis of prudential considerations of third-party standing.

AFFIRMED.

complaint, Hong Kong failed to allege any impediment that prevents the Southeast Asian WIC participants from asserting their own rights. But even if it had so alleged, "[t]he assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974).

Alternatively, Hong Kong contends that the ability of third parties to bring their own representative suit should not defeat a vendor's standing when, as in *Craig,* he can advocate his customers' rights with equal effectiveness. In re-

sponse to this argument, we simply note that we do not agree that Hong Kong is an effective proponent of its customers' rights. *See Singleton,* 428 U.S. at 113–14, 96 S.Ct. at 2873–74 (noting that courts should not adjudicate constitutional rights unnecessarily, especially if the holders of the rights do not choose to assert them).