John VAN DYKE and Mario Majorski, Plaintiffs,

v.

REGENTS OF the UNIVERSITY OF CALIFORNIA, et al., Defendants.

No. CV 92–3459 JSL.

United States District Court, C.D. California.

March 11, 1993.

Randall A. Spencer, Bowles & Moxon, Hollywood, CA, for plaintiffs.

Marianne Schimelfenig, University of California, Oakland, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

LETTS, District Judge.

### INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs John Van Dyke and Mario Majorski are extension students at the University of California at Los Angeles (UCLA) and members of the Church of Scientology. On June 8, 1992 they instituted this action against the Regents of the University of California; the Chancellor of the University, Charles Young; and a professor of the University, Dr. Louis West.

Plaintiffs allege that defendants have engaged in a course of conduct that violates the First Amendment of the United States Constitution. In their First Amended Complaint, plaintiffs sought injunctive relief under the Constitution and under 42 U.S.C. § 1983, as well as declaratory relief pursuant to 28 U.S.C. § 2201. On September 30, 1992, plaintiffs voluntarily dismissed a fourth claim for relief under California law. At the same time they dismissed the Regents from the § 1983 claim.

On October 13, 1992, the court heard oral argument on defendants' motion to dismiss the complaint and then took the matter under submission. The court subsequently requested the parties to submit supplemental briefs on the issue of standing. On February 16, 1993, the court heard oral argument on the standing issue. At this hearing, plaintiffs conceded that they claimed standing only in their capacity as state taxpayers, and that they were proceeding solely under an Establishment Clause theory. Accordingly, all of plaintiffs' claims unrelated to this Establishment Clause claim are HEREBY DISMISSED.

### I. PLAINTIFFS LACK TAXPAYER STANDING

Taxpayers have frequently been held to possess standing to challenge state expenditures that purportedly violate the Establishment Clause. *See e.g. Cammack v. Waihee*, 932 F.2d 765 (9th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992); *School District of Grand Rapids v. Ball*, 473 U.S. 373, 380, 105 S.Ct. 3216, 3220 n. 5, 87 L.Ed.2d 267 (1985). Nevertheless, such plaintiffs must, like all others, demonstrate that they fulfill each of the constitutional and prudential requirements of the standing doctrine. The constitutional requirements involve 1) a threatened or actual "distinct and palpable" injury to the plaintiff; 2) a "fairly traceable causal connection" between that injury and defendant's conduct; and 3) a "substantial likelihood" that the requested relief will redress or prevent the injury. The prudential limitations require the plaintiff to 1) assert his or her own rights; 2) have an injury that amounts to more than a generalized grievance, and 3) have an interest arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question. *McMichael v. County of Napa*, 709 F.2d 1268, 1269–70 (9th Cir.1983).

#### A. Content of Plaintiffs' Allegations

Plaintiffs' allegations relevant to their claim as taxpayers are as follows:

1. Plaintiffs are California taxpayers. First Amended Complaint at ¶ 3.

2. On or about September 9, 1985, UCLA cosponsored a conference that allegedly attacked Scientology. First Amended Complaint at ¶ 10.

3. Defendants Regents and Young reimbursed Dr. West for his participation at this conference. First Amended Complaint at ¶ 11.

4. On or about November 18, 1988, UCLA cosponsored a second conference that

allegedly attacked Scientology. First Amended Complaint at ¶ 13.

5. Defendants Regents and Young again reimbursed Dr. West. First Amended Complaint at ¶ 14.

6. From October 25 to October 31, 1989, Dr. West attended a conference in New Jersey that allegedly attacked Scientology. Defendants Regents and Young again reimbursed Dr. West. First Amended Complaint at ¶ 18.

7. Defendants Regents and Young reimbursed Dr. West for membership fees in the American Family Foundation, a group that allegedly engages in activities detrimental to Scientology.

8. On May 6, 1992, Dr. West made derogatory remarks about Scientology at a psychiatric convention in Washington, D.C. He either has been or will be reimbursed for his travel expenses. First Amended Complaint at ¶ 21.

9. These activities violate the Establishment Clause of the United States Constitution. First Amended Complaint at ¶¶ 17, 26.[1]

B. Injury Required in Taxpayer Standing Cases

■ In order to assert state taxpayer standing, a plaintiff must allege an actual financial injury as a taxpayer. In the leading Supreme Court case on state taxpayer standing, *Doremus v. Board of Education,* 342 U.S. 429, 433, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952), the Supreme Court held that a state taxpayer seeking standing as such must demonstrate a "good-faith pocketbook action" in which he or she suffers a "direct dollars-and-cents injury." The *Doremus* court found that a taxpayer who challenged a law that mandated school prayer lacked standing because he failed to show that "the brief interruption in the day's schooling caused by compliance with the statute adds cost to the school expenses or varies by more than an

incomputable scintilla the economy of the day's work." *Id.* at 431, 72 S.Ct. at 396.

The leading case interpreting *Doremus* in the Ninth Circuit is *Hoohuli v. Ariyoshi,* 741 F.2d 1169 (9th Cir.1984), in which the Ninth Circuit found that taxpayers had standing to challenge Hawaii's policy of distributing funds to descendants of aboriginal Hawaiians. The court set forth three criteria for determining whether a taxpayer action met the *Doremus* requirement of a "good-faith pocketbook action." Plaintiffs must 1) set forth their status as taxpayers; 2) challenge the "appropriation, transferring and spending ... of taxpayers' money from the General Fund of the State Treasury"; and 3) in their pleadings specifically set forth the amounts appropriated for the allegedly unlawful purpose. *Id.* at 1180. *See also Colorado Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1400–1402 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1360, 122 L.Ed.2d 739 (1993) (discussing the three-part Ninth Circuit test but rejecting it in favor of a stricter requirement of personal monetary loss).

The Ninth Circuit most recently affirmed *Hoohuli* in *Cammack v. Waihee,* 932 F.2d 765 (9th Cir.1991), in which the court found taxpayers possessed standing to challenge a Hawaii statute declaring Good Friday to be a legal holiday. Again, all three prongs of the test were satisfied: the challenged expenditures came from the state's general fund, plaintiffs set forth their status as state taxpayers, and "stated the amount of funds appropriated and allegedly spent by the taxing governmental entities as a result...." *Id.* at 771.[2]

■ The second factor in *Hoohuli,* that the challenged expenditures involved moneys from the general fund of the state treasury, is properly viewed as a *requirement* for taxpayer standing in the Ninth Circuit, and not merely as a particular factual circumstance that happened to suffice for a "good-faith

---

1. Plaintiffs complain of numerous other activities on Dr. West's part (Complaint at ¶¶ 15, 16, 20, 23), but do not allege that any specific state funds were expended upon them. These allegations are therefore irrelevant to a suit based on taxpayer standing and shall be disregarded.

2. Contrast with *Reimers v. State of Oregon,* 846 F.2d 561, 563 (9th Cir.1988), in which the court found that state prisoner lacked taxpayer standing to challenge the absence of a Catholic priest on the prison chaplain staff, because the grievance did not allege an expenditure of state funds.

pocketbook action" in that case. Requiring the challenged expenditure to derive from the state general fund serves as a crucial limit upon the types of state spending that a citizen may attack solely as a state taxpayer: It would prevent, for example, state taxpayers from challenging a state's department of transportation decision to construct a new highway, a state university's decision to purchase a rare books collection, or the decision by a local office of the state coastal commission to purchase a new typewriter ribbon. The Supreme Court has sharply curtailed claims based solely on federal taxpayer standing because such claims closely resemble generalized grievances, which may not be asserted. *See, e.g., United States v. Richardson*, 418 U.S. 166, 175–76, 94 S.Ct. 2940, 2945–47, 41 L.Ed.2d 678 (1974). The general fund requirement for state taxpayer standing in this Circuit serves the same purpose: to ensure that state taxpayers assert bona fide pocketbook injuries instead of impermissible generalized grievances.

### C. Analysis

■ In the instant case, plaintiffs allege only the expenditure of state funds by the Regents, Mr. Young and Dr. West. Plaintiffs do not allege that these funds derive from the general fund of the state treasury, as *Hoohuli* specifically requires. On the face of the pleadings, it instead appears to the court that the challenged expenditures derive from university operating funds. Although the complaint complains of specific expenditures, it does not allege that these funds would not have been spent—only that they would not have been spent for the *purpose* of which plaintiff complains. Accordingly, the court finds that plaintiffs have failed to allege a "good-faith pocketbook action" within the meaning of *Hoohuli*, thereby mandating that plaintiff's remaining claim be DISMISSED for lack of standing.

### II.  *PLAINTIFFS ALSO FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED*

Alternatively, the court finds that plaintiffs' complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### A.  Standard for 12(b)(6) Dismissal

■ "A complaint cannot not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must construe the complaint in the light most favorable to the plaintiff, and must accept as true all material allegations, as well as reasonable inferences to be drawn from them. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980); *N.L. Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

### B.  Plaintiffs' Failure to Allege Sufficient Facts

■ In order to make out a prima facie case of an Establishment Clause violation, plaintiffs must allege facts that show that the state activity in question 1) has no secular legislative purpose; 2) that its primary effect either advances or inhibits religion; and 3) that the activity fosters an excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

First, plaintiffs have alleged no facts that suggest that UCLA's general policy of reimbursing its professors for certain extracurricular expenses is motivated by a desire to interfere with religion, rather than by the legitimate secular purpose of fostering academic expression, freedom of inquiry, and the free exchange of ideas.

Second, plaintiffs have alleged no specific inhibition of religion resulting from this reimbursement policy. Plaintiffs allege several instances of the use of state funds to sponsor conferences that were hostile to Scientology. They do not, however, allege facts that show that the discussion of such topics at the conference in any way inhibited the right of any member of the Church of Scientology to practice his or her faith.

Although it is the view of the court that plaintiffs have almost certainly failed to plead

facts sufficient to overcome the first two prongs of the *Lemon v. Kurtzman* test, the court is also heedful of its obligation to accept as true all "reasonable inferences" to be drawn from the allegations in the complaint. *N.L. Industries,* 792 F.2d at 898. Accordingly, despite the substantial doubt with which the court views plaintiffs' prospects for actually generating a triable issue of material fact as to the purpose and effect prongs of *Lemon v. Kurtzman,* the court does not find, for the purposes of this decision, that the allegations in the complaint fail in these respects for pleading purposes.

■■ Plaintiffs, however, necessarily fail to allege facts that show entanglement, which would violate the third prong of *Lemon v. Kurtzman.* To determine whether entanglement exists, a court must inquire into the character and nature of the recipient of the state aid, the nature of the aid itself, and "the resulting relationship between the government and the religious authority." *Lemon v. Kurtzman,* 403 U.S. 602, 614–615, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745. Plaintiffs contend that UCLA sponsors anti-religious activity by reimbursing Dr. West. To grant plaintiffs' request and bar UCLA from reimbursing professors for such activities would require the state to evaluate whether various activities are anti-religious, pro-religion, or neutral—thereby producing the very entanglement that the Establishment Clause prohibits.

Accordingly, the court finds that plaintiffs fail to state a claim for a violation of the Establishment Clause.

### D.  *Unavailability of Relief*

■■ Even if it were possible for plaintiffs to make out a violation of the Establishment Clause, the court cannot conceive of any prospective relief for plaintiffs that would be constitutional.

Plaintiffs request a preliminary and permanent injunction enjoining Dr. West and his associates from "using state funds administered by defendants Regents and Young to fund anti-religious activities of West which have the purpose *or effect* of disrupting, destroying, impeding and interfering with the free exercise by plaintiffs of their religion" (emphasis added), from "using state funds to finance his anti-religious and CAN/AFF activities," and a declaratory judgment that these activities "were and are illegal and improper." First Amended Complaint, ¶¶ 38, 39, 40.

The court has neither the power to grant such relief nor to enforce it if granted. It is both vague, since defendants would have no idea of what activity was proscribed by the ban on "anti-religious" activity, and overbroad, because a blanket ban on "anti-religious" activity would encompass a great deal of academic speech and scholarly inquiry clearly protected by the First Amendment.

It is difficult to imagine *any* form of relief that would not raise similarly insurmountable First Amendment concerns. Even if the court could craft injunctive language neither vague nor overbroad, the injunction would still designate a certain category of activity as impermissible and punishable by contempt. The probable result would be a chilling of Dr. West's rights of free speech, since the fear of being held in contempt of court might lead him to exercise excessive caution and to steer well clear of the prohibited subject matter.

Finally, enjoining either Dr. West or the University from engaging in or sponsoring activities offensive to Scientology would in itself create an establishment of religion, just as would like proscriptions against professors criticizing—or even crusading against—Buddhism, Judaism or Christianity. The Supreme Court, however, has observed that "the state has no legitimate interest in protecting any or all religions from views distasteful to them...." *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 505, 72 S.Ct. 777, 782, 96 L.Ed. 1098 (1952). Some view the teaching of evolution as anti-religious because it offends the tenets of certain faiths and sows the seeds of skepticism in many a student. Nevertheless, a state may not prohibit either the study or teaching of evolution, since to do so would amount to government establishment of the beliefs of that particular sect. *Epperson v. Arkansas,* 393 U.S. 97, 106–107, 89 S.Ct. 266, 271–72, 21 L.Ed.2d 228 (1968). For identical reasons, to

ban state professors from speaking favorably or critically of Scientology would amount to establishment of the tenets of Scientology.

## CONCLUSION

Plaintiffs have failed to allege a "good faith pocketbook action" that would entitle them to taxpayer standing. Furthermore, even if they had pleaded sufficient facts to make out a violation of the Establishment Clause (they do not), the court finds that no relief exists under the circumstances that would not itself run far afoul of the First Amendment.

Accordingly, defendant's motion to dismiss the First Amended Complaint must be GRANTED.

IT IS SO ORDERED.