MAI SYSTEMS CORPORATION,
a Delaware Corporation,
Plaintiff,

v.

UIPS, a California corporation;
and Richard H. Weisbrich, an
individual, Defendants.

No. C–94–0883–SC.

United States District Court,
N.D. California.

May 26, 1994.

David J. Meyer, Graham & James, Los Angeles, CA, for plaintiff.

Walter W. Moore, Bancroft & McAlister, San Francisco, CA, Douglass H. Mori, Parker, Stanbury, Babcock, Los Angeles, CA, for defendants.

## ORDER RE: MOTION TO DISMISS COUNTERCLAIM

CONTI, District Judge.

### I. BACKGROUND AND INTRODUCTION

This matter is before the court on plaintiff's motion to dismiss a counterclaim.

Plaintiff, MAI Systems Corporation ("MAI"), is a computer hardware and software manufacturer. Defendant, UIPS, is an independent service contractor engaged in the business of servicing and maintaining computers manufactured by MAI and others. Plaintiff alleges that UIPS has infringed its valid copyright in diagnostic software allegedly used by defendants in the unlicensed servicing of MAI computers.

Defendant has asserted a compulsory counter-claim arising under California's broad unfair competition statute set forth in Business and Professions Code section 17200 et seq. The gravamen of defendants' counterclaim is that MAI has deceived its customers through misleading contractual language concerning its policies for licensing diagnostic software to independent service organizations.

This matter is before the court on MAI's motion to dismiss defendant's counterclaim. Having reviewed the arguments of counsel, the court dismisses defendant's state law counterclaim for lack of standing.

## II. *LEGAL STANDARD*

### A. *Dismissal For Failure To State A Claim*

■ A complaint should not be dismissed under F.R.C.P. Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987).

■ A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or; (2) insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984). When reviewing a motion to dismiss, all the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Abramson v. Brownstein,* 897 F.2d 389 (9th Cir. 1990). However, legal conclusions, deduc-

tions or opinions couched as factual allegations are *not* entitled to a presumption of truthfulness. *Jones v. Comm. Redevelopment Agency,* 733 F.2d 646 (9th Cir.1984). Failure to properly allege standing is a ground for dismissal under Rule 12(b)(6). *Western Mining Council v. Watt,* 643 F.2d 618 (9th Cir.1981).

### B. *Standing*

■ Standing is a threshold requirement in every federal case. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the controversy as to warrant his invocation of federal court jurisdiction. *Id.* The plaintiff must have suffered "some threatened or actual injury resulting from the putatively illegal action." *Id.* The standing inquiry involves both constitutional and prudential limitations. *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir.1983).

■ The "three separate but interrelated components" of Article III standing are: (1) a distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the injury and challenged conduct; and (3) a substantial likelihood that the relief requested will prevent or redress the injury. *Id.* These constitutional limitations may be summarized as the requirements of injury, causation and redressability.

■ The three prudential limitations are as follows: (1) the plaintiff must assert his own rights and not rest his claim to relief on the legal rights or interests of third parties; (2) the plaintiff's injury, although cognizable under Article III, must not be "shared in equal measure by all or a large class of citizens" so as to represent only a "generalized grievance"; and (3) the plaintiff's interest must arguably fall within the zone of interests intended to be protected by the statute at issue. *Id.*

■ Standing is a jurisdictional inquiry and it is axiomatic that states "have no power directly to enlarge or contract federal jurisdiction." *Fiedler v. Clark,* 714 F.2d 77,

79–80 (9th Cir.1983) (no standing to sue in federal court where plaintiff sued as private attorney general under Hawaii statute which purported to confer standing to enforce federal statutes which themselves did not provide private right of action). Moreover, a state legislature may not waive by statute the prudential or constitutional limitations on standing in federal court and, by way of a state-created right, confer an Article III injury where none would otherwise exist. *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F.Supp. 925, 929 (N.D.Cal.1992).

## III. *DISCUSSION*

Defendant asserts a counterclaim under B & P Code section 17203 which confers on courts of competent jurisdiction broad powers to enjoin "the use or employment by any person of any practice which constitutes unfair competition." Courts acting under authority of this section may also issue such orders "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id.* "Unfair competition" within the meaning of this section is any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Section 17200.

■ The unfair competition statute may be enforced by a variety of public entities and by "any person acting for the interests of itself, its members or the general public." B & P Code § 17204. Private litigants have *no* independent cause of action for damages under the unfair competition statute. *Industrial Indem. Co. v. Santa Cruz County Superior Court*, (1989) 209 Cal.App.3d 1093, 257 Cal.Rptr. 655. Instead, their remedies are strictly limited to injunctive relief and restitution, which may include disgorgment of illicit profits to injured parties. *E.W. French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1401 (9th Cir.1989); *Band of the West v. Superior Court*, (1992) 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545; *People v. Thomas Shelton Powers, M.D., Inc.* (1992) 2 Cal.App. 4th 330, 340, 3 Cal.Rptr.2d 34.

■ Defendants rest their unfair competition claim on the premise that MAI's software licensing agreements misleadingly imply that MAI licenses its diagnostic software to third-party independent service companies who compete with the manufacturer for maintenance contracts on MAI computers. Although defendants are not parties to the allegedly misleading agreements, they assert standing to sue on behalf of MAI's customers under the private attorney general provision of Section 17204, as well as standing to sue on their own behalf.

Defendants' standing argument relies heavily on *Midpeninsula Citizens for Fair Housing v. Westwood Investors*, (1990) 221 Cal.App.3d 1377, 271 Cal.Rptr. 99 and *Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 164 Cal.Rptr. 279. Both state court opinions recognize the standing of a disinterested party to bring an action to enjoin unfair competition under section 17204, even though the plaintiff was not in privity with the defendants or personally aggrieved by the challenged conduct. These cases unquestionably establish a very liberal *State* standing rule in favor of plaintiffs asserting actions pursuant to the private attorney general clause of section 17204. However, defendants misplace their reliance on these authorities to the extent that they fail to address the particular requirements of federal standing doctrine. For the following reasons, the court concludes that defendants lack standing to assert their counterclaim in federal court.

First, defendants' state law claim, as set out in their pleadings, is entirely derivative of the rights (contractual and otherwise) of MAI's customers, who are third-parties to this action. Accordingly, defendant's counterclaim violates the prudential limitation that parties must assert their own rights and not rest their claim to relief on the legal rights or interests of others.

Second, defendants theory of actual injury does not rise to the level of "distinct and palpable" harm required for Article III justiciability. Defendants do not specifically allege any injury to themselves in their pleadings. However, they argue in their papers that they are injured by MAI's allegedly

deceptive licensing practices under a novel theory of lost business opportunity.

Although difficult to discern with precision, defendants' argument appears to run as follows. MAI implies in their customer agreements that they will license their software to third-party service contractors when in fact they do not. If MAI's prospective customers only knew that the manufacturer never authorizes third-party service competitors to use its diagnostic software, then some of them might negotiate "more favorable terms." Specifically, some of their prospective customers might insist that the manufacturer license its copyrighted diagnostic software to the contractors of the customer's choosing—possibly including the defendants. This convoluted theory of economic injury is far too speculative to satisfy to the distinct and palpable harm requirement of Article III. Moreover, the requisite causal connection between conduct and injury cannot be deduced from the hazy chain of inferences defendants ask this court to draw.

 Finally, it is unclear what effective redress, if any, the court could offer defendants under section 17203, even assuming that defendants' nebulous lost business opportunity amounted to a cognizable injury under Article III. Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims. *Meta–Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1363 (C.D.Cal.1984). Defendants' claim for monetary relief is accordingly barred by the rule limiting recovery under section 17203 to restitution and injunctive relief. *See e.g. E.W. French & Sons, Inc.*, 885 F.2d 1392, 1401 (9th Cir.1989) (damages are not available under section 17203).

A restitutionary remedy would only be available to the victims of MAI's purportedly misleading contracts—the allegedly overcharged customers—and not by MAI's competitors. Moreover, defendant's prayer for injunctive relief—an order reforming MAI's software agreements to compel MAI to license its copyrighted software to third-party competitors—appears to be preempted under the federal copyright act, which confers on MAI an exclusive right to reproduce and distribute its software. 17 U.S.C. section 106(1),(3); *see also Florida Avocado Growers v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963) (state law preempted when compliance with both state and federal law is impossible). Defendants are not entitled to restitution and their claims for damages and injunctive relief are barred as a matter of law. Accordingly, defendants' counterclaim is contrary to the third constitutional limitation on standing, which requires a substantial likelihood that the relief requested will prevent or redress the injury. *McMichael*, 709 F.2d at 1269.

 Although the court dismisses the counterclaim on the threshold consideration of standing, it notes that it would likely reach a similar result on the merits. The defendants' counterclaim rests largely on an issue of contractual construction which is a question of law for the court to decide. *Nevets C.M., Inc. v. Nissho Iwai American Corp.*, 726 F.Supp. 525, 531 (D.N.J.1989). Taking as true all of defendant's factual allegations, the court finds that there is nothing unfair or misleading about the plaintiff's customer licensing agreements that would justify relief under section 17200. The substance of defendants' claim is as follows:

> MAI words its software licensing agreements so as to create the impression that MAI customers "may give access to the software" not just to the customers' own employees and to MAI's employees, but also to *"others authorized by MAI in writing."* This clause implies that MAI actually does authorize persons *other than* its customers' employees and its own employees to use the software. Otherwise the clause would be meaningless.

Df.Memo.Opp. 2:9–18; Counterclaim 4–8 (emphasis in original). Defendants' construction of the agreement strains the ordinary meaning of the contract language. The agreements specify that MAI "may give access to the software . . . to others authorized by MAI in writing." Nothing in this statement implies that MAI has licensed its software to third-parties in the past. Nor does it amount to a promise that it will do so in the future. The operative language is permissive rather than restrictive. The clause

provides that MAI *"may"* license its software to others; it does not state that the manufacturer *"will"* license its software to others. Moreover, the agreement expressly conditions third-party access to the software on the prior written authorization of the manufacturer. This condition necessarily implies discretion on the part of the manufacturer to withhold written authorization.

The terms of the agreement are clear and unambiguous and accordingly govern the rights and relationship of the parties. MAI's customers acceded to the limitations at issue and have not been heard to complain. They were free to negotiate a different licensing policy if they so desired. They were free to purchase their computers and software from a different manufacturer. However, having entered into the agreements, the customers are bound by their terms. The right to withhold authorization from third-party competitors is well within the rights of the manufacturer under the agreements and the manufacturer does nothing unfair or unlawful by exercising the rights it legitimately bargained for.

The sole case cited in support of defendant's theory of unfair competition liability is readily distinguishable on its facts. In *People v. Dollar Rent–A–Car Systems, Inc.,* three rental car agencies were found to have engaged in unfair competition when their sales agents orally misrepresented the scope of protection afforded under the collision damage waiver provisions included in the agencies' written rental agreements. (1989) 211 Cal.App.3d 119, 259 Cal.Rptr. 191. Specifically, the *Rent–A–Car* court found that statements made by agents regarding the waiver conflicted with the written contract language and further found that the contract language itself was ambiguous and misleading to consumers. *Id.* Here, there is no allegation of extrinsic fraud and the terms of the agreement are clear and unambiguous.

## IV. *CONCLUSION*

For the foregoing reasons, it is HEREBY ORDERED that:

1. plaintiff's motion to dismiss the counterclaim of defendants UIPS Corporation and Richard H. Weisbrich is GRANTED;

2. Defendants' counterclaim is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED