**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NV-14-1246-DJuKu |
| WORLD BOTANICAL GARDENS, INC., | Bk. No. 13-50833 |
| Debtor. | |
| CALVIN ANDRUS; DOUGLAS LEE, | |
| Appellants, | |
| v. | **MEMORANDUM**[1] |
| UNITED STATES TRUSTEE; WORLD BOTANICAL GARDENS, INC., | |
| Appellees. | |

Submitted without Oral Argument
on March 19, 2015

Filed - April 7, 2015

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

Appearances:     Appellants Calvin Andrus and Douglas Lee, pro se, on brief; Kevin A. Darby on brief for Appellee World Botanical Gardens, Inc.; Ramona D. Elliott, P. Matthew Sutko, Noah M. Schottenstein, Tracy Hope Davis, Nicholas Strozza and William B. Cossitt on brief for Appellee United States Trustee.

Before: DUNN, JURY and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appellants, Douglas Lee and Calvin Andrus,[2] shareholders of the debtor, World Botanical Gardens, Inc. ("WBGI"), appeal the bankruptcy court's order converting WBGI's chapter 11 case to chapter 7 ("Conversion Order").[3]  On appeal, Lee and Andrus seek to overturn the Conversion Order on the ground that the majority of WBGI's shareholders did not receive notice of the hearing on the conversion.  For the reasons set forth below, we AFFIRM the bankruptcy court's Conversion Order.

**FACTS**[4]

A.    Procedure background

WBGI operated a tourist attraction near Hilo, Hawaii; it consisted of a botanical garden, a visitor center/gift shop, a zip line operation and a Segway tour.  With the exception of one year, WBGI never generated a profit.

---

[2] Walter Wagner ("Wagner") was an appellant to this appeal initially, but he was dismissed as an appellant.  We describe in more detail below his connection to and participation in the underlying bankruptcy case and this appeal.

[3] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All "Local Rule" references are to the Local Bankruptcy Rules, U.S. Bankruptcy Court, District of Nevada, Local Rules 1001-9037.

[4] Because we lack many of the relevant documents in the excerpts of record submitted by the parties, we have exercised our discretion to reach the merits of the appeal by independently reviewing the bankruptcy court's electronic docket and the imaged documents therein.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Wagner was one of the founders of the botanical garden. He also is a shareholder of WBGI.

WBGI filed its chapter 11 petition on April 30, 2013. Wagner filed a proof of claim in the amount of eleven million dollars arising from two lawsuits, one in Hawaii state court involving claims for back pay based on quantum meruit, and the other in the U.S. District Court for the District of Utah involving a defamation claim against former and current WBGI officers and directors. Notably, WBGI obtained judgments against Wagner in these lawsuits totaling more than two million dollars.

Wagner filed a notice of appeal and an opening brief in this appeal with Lee and Andrus. On appeal, they challenged the Conversion Order, among other "incidental matters."

In an order entered on October 3, 2014, the motions panel noted that the only issue on appeal as to the Conversion Order was whether proper notice of the hearing on the Conversion Order was provided. The motions panel pointed out that Wagner clearly did receive notice of the hearing. It thus questioned why Wagner should not be dismissed as an appellant to this appeal. The motions panel required Wagner to respond to its Order re: Response by October 27, 2014.

Wagner did not respond to the Order re: Response. He therefore was dismissed as an appellant to this appeal pursuant to an order entered on November 14, 2014.

B.    WBGI's bankruptcy case

    1.    Sale of substantially all of WBGI's assets

Among its assets, WBGI had a 26-acre parcel of real property, associated land grants and improvements, several

3

vehicles, garden tools and equipment, office equipment and gift shop inventory.

Two days after filing its chapter 11 petition, WBGI filed several first-day motions, including a motion to sell substantially all of its assets to BWA, LLC under § 363(b), (f) and (m)("May Sale Motion").[5] BWA, LLC also agreed to assume substantially all of WBGI's debts, except for Wagner's claims and certain executory contracts.

On May 17, 2013, WBGI filed a notice concerning the first-day motions, including the May Sale Motion. In the notice, WBGI stated that a hearing was set for May 21, 2013.[6] It further stated that any oppositions to the first-day motions had to be filed by May 21, 2013. No proof of service accompanied the notice.

The bankruptcy court held a hearing on the May Sale Motion, but continued it to June 6, 2013.[7] As far as we can tell from the record and the bankruptcy court's docket, no action ever was taken on the May Sale Motion.

On July 22, 2013, Andrus filed a motion seeking to have

---

[5] Steve Bryant was WBGI's CEO. Mark Robinson was WBGI's CFO. Bryant and Robinson expressed interest in purchasing WBGI's assets. To that end, they formed BWA, LLC.

[6] WBGI simultaneously moved to shorten time for the sale hearing. However, no order appears to have been entered on the motion.

[7] We are unable to determine definitively whether any of Wagner, Andrus or Lee appeared at the May 21, 2013 hearing. A record of proceedings for the hearing was not filed on the bankruptcy court's docket nor included in the record before us.

4

himself appointed as trustee for WBGI. He claimed that he had formulated a chapter 11 plan that would allow WBGI to continue operations profitably. Andrus also proposed that WBGI cease prosecuting its claims against Wagner and instead enter into mediation with Wagner. As far as we can tell from the record and the bankruptcy court's docket, no action ever was taken on this motion.

On August 18, 2013, WBGI renewed its motion to sell substantially all of its assets to BWA, LLC ("August Sale Motion"). As in the May Sale Motion, WBGI proposed to sell substantially all of its assets to BWA, LLC for cash and other consideration under § 363(b), (f) and (m). BWA, LLC again agreed to assume substantially all of WBGI's debts, except for Wagner's claims and certain executory contracts.

WBGI sought and obtained an order from the bankruptcy court shortening time for hearing on the August Sale Motion as follows: 1) setting a hearing on the August Sale Motion for August 28, 2013; and 2) setting August 26, 2013, as the deadline to oppose the August Sale Motion. On the same day it obtained the order shortening time, WBGI filed a notice of the order. It attached to the notice a list of parties served with the order; Wagner was among those served.[8]

On August 26, 2013, Andrus filed a document titled, "Points and Authorities in Support of Opposition to Motion for Sale of WBGI Assets," supported by affidavits from him and Wagner.

---

[8] The Service List indicated that Andrus may have been bypassed because he had an undeliverable address.

Andrus alleged that the proposed sale to BWA, LLC was designed to "fleece" the shareholders and "line the pockets" of Robinson and Bryant, who were purchasing WBGI's assets for less than their actual value. Andrus also contested BWA, LLC's rejection of Wagner's claims. He again detailed his proposal to continue WBGI's operations, which included obtaining outside funding and ceasing prosecution of WBGI's claims against Wagner.

At the start of the August sale hearing, counsel for WBGI pointed out that the May Sale Motion and the August Sale Motion were "very similar." As such, he claimed, "all parties in interest that have been participating have known since at least May 2nd that [WGBI was] moving towards proposing to sell all [its] assets, how [WBGI] valued those assets, and a general structure of the consideration that was being proposed to sell or proposed for the sale of the assets." Tr. of August 28, 2013 hr'g, 4:5-10.

Both Wagner and Andrus appeared at the August sale hearing. Wagner claimed that, contrary to WBGI's assertions, WBGI was operating at a profit. He then alleged that he had a secured claim against WBGI arising from his Hawaii state court action. However, upon questioning by the bankruptcy court, Wagner admitted that he had not obtained a judgment in the Hawaii state court action.

Andrus claimed that he had not been provided notice of the August sale hearing. Upon questioning by the bankruptcy court, Andrus explained that he had received notice of the hearing the week prior. But Andrus claimed that had he received notice earlier, he would have provided more details in his proposed

6

chapter 11 plan.

Andrus additionally argued that he had a right to propose a chapter 11 plan. However, the bankruptcy court pointed out that the exclusivity period for WGBI to file a plan had not yet expired.

The bankruptcy court ultimately approved the August Sale Motion. It acknowledged that "this may not be the best proposition, but it's certainly the one that provides cash and preserves the entity going forward." Tr. of August 28, 2013 hr'g, 21:16-18. The bankruptcy court added that "under the circumstances, this [was] probably the best result . . . ." Tr. of August 28, 2013 hr'g, 22:2-3.

On September 16, 2013, Wagner filed a document titled, "Objection to Form of Order." He mentioned that he and Andrus had appeared at the August sale hearing by phone. Wagner argued that he objected to the form of the proposed sale order because: 1) he had discharged WBGI's state court judgments in his personal bankruptcy case;[9] 2) WBGI had obtained its judgments against him by fraud; and 3) he held secured and unsecured claims against

---

[9] Wagner filed his chapter 7 bankruptcy petition in Salt Lake City, Utah, on December 12, 2012 (12-35494). It was closed as a no asset case on March 20, 2013, and Wagner received his discharge.

However, before he received his discharge, on March 14, 2013, WBGI initiated an adversary proceeding (13-2099) against Wagner to except its judgments from discharge under § 523(a)(2), (4) and (6). Ultimately, the Utah bankruptcy court granted WBGI's motion for summary judgment, determining that the judgments were excepted from discharge. It entered a judgment in the amount of $2,257,050.96 in favor of WBGI against Wagner on December 2, 2013 ("Section 523(a) Judgment").

7

WBGI in amounts exceeding the amounts of the judgments against him. Wagner argued that the proposed sale order did not account for any of his claims against WBGI. He sought entry of a modified order that provided for payment of his alleged claims against WBGI.

The bankruptcy court entered a sale order ("Sale Order") on September 25, 2013. In the Sale Order, the bankruptcy court reiterated the terms of the sale as set forth in the August Sale Motion. It determined that entry of the Sale Order was in the best interests of WBGI, its estate, its creditors and other parties in interest. It further made findings and determined that the purchaser, BWA, LLC, was a good faith purchaser of the WBGI assets for purposes of § 363(m).

Unsurprisingly, immediately following its entry, Andrus and Wagner filed objections to the Sale Order. In his objection, Andrus admitted that he appeared at the August sale hearing by phone. However, he contended that he and others had not been notified of WBGI's intent to sell substantially all of its assets. Specifically, Andrus claimed that he had not been "legally notified" of WBGI's intent to liquidate its assets by its board of directors or its counsel. He did not become aware of WBGI's intent to sell substantially all of its assets until mid-August 2013 when Wagner informed him of it. He argued that "federal rules of procedure" required that he receive "formal notice." Andrus moreover claimed that none of the other shareholders of WBGI received notice of the sale, except Bryant, Robinson and a few other current board members.

Andrus then went on to repeat his earlier arguments: that he

8

be appointed as trustee, that litigation against Wagner cease, that the sale to BWA, LLC favored current board members to the detriment of WBGI's shareholders, and that the sale price was less than the actual value of WBGI's assets.

In his objection, Wagner stated that neither he nor Andrus received a copy of the Sale Order for their review. He also stated that he and Andrus disapproved of the Sale Order.

Notably, neither he nor Andrus appealed the Sale Order, and no stay of the Sale Order was sought or obtained.[10] Instead, Wagner, Andrus and Lee filed a chapter 11 plan in which they proposed to reorganize WBGI. To that end, they proposed: 1) appointing a bankruptcy trustee; 2) forming a new board of directors, which included themselves and others; and 3) continuing WBGI's operations. They also sought rescission of the Sale Order.

2.  Conversion of WBGI's chapter 11 case to chapter 7

On February 19, 2014, the United States Trustee ("UST") filed a motion to dismiss WBGI's chapter 11 case for WBGI's failure to file monthly operating reports timely and to pay quarterly fees timely ("UST Motion to Dismiss"). At the April 23, 2014 hearing on the UST Motion to Dismiss ("Conversion Hearing"), counsel for WBGI stated that WBGI was no longer operating a business. But he noted that WBGI had obtained the Section 523(a) Judgment against Wagner when it prevailed in its adversary proceeding against him in his personal chapter 7

---

[10] Based on our most recent review of the bankruptcy case docket, we note that no shareholders or other parties in interest appealed the Sale Order.

9

bankruptcy case. Counsel for WBGI therefore proposed that WBGI's chapter 11 case be converted to chapter 7 so that a chapter 7 trustee could determine whether to pursue collection of the Section 523(a) Judgment or sell it to another party.[11]

Both Wagner and Andrus appeared at the Conversion Hearing, and Lee filed an affidavit in opposition to the UST Motion to Dismiss well in advance of the Conversion Hearing. Andrus requested that the bankruptcy court rescind the Sale Order on the ground that the majority of WBGI's shareholders had not been notified of the sale. When the bankruptcy court asked if he had appealed the Sale Order, Andrus responded that he had not.

Andrus then contested the conversion of WBGI's chapter 11 case to chapter 7. Andrus argued that WBGI should continue in chapter 11 "to address this problem with due process." Tr. of April 23, 2014 hr'g, 9:19.

Wagner echoed Andrus' argument that none of WBGI's shareholders had been notified of the sale. He claimed that he had been the only shareholder to receive notice of the sale – and only "by happenstance."

Wagner then urged the bankruptcy court to keep WBGI in chapter 11. He offered to pay personally the delinquent UST quarterly fees. Wagner also requested that the bankruptcy court replace WBGI's board of directors and appoint a chapter 11 trustee. He claimed that all of the shareholders wanted WBGI to continue its operations as a reorganizing debtor.

---

[11] The chapter 7 trustee ultimately filed a no asset report on July 23, 2014.

10

Counsel for WBGI pointed out that Wagner could not claim that he did not receive notice of the sale because he appeared at the August sale hearing. When the bankruptcy court asked Wagner if he received notice of the August Sale, he answered in the affirmative.

Wagner explained that though he received notice of the sale, the other shareholders had not. In response, the bankruptcy court pointed out that he could not "speak on behalf of the other [shareholders]." Tr. of April 23, 2014 hr'g, 19:22-23.

It then asked Wagner if he received notice of the sale and if he appeared at the August Sale Hearing by phone. Wagner answered both questions in the affirmative.

The bankruptcy court then turned to Andrus, asking him, under oath, if he had received notice of the August sale hearing and if he had filed an opposition to the August Sale Motion. Like Wagner, Andrus answered both questions in the affirmative. He also admitted that he had filed an opposition to the entry of the Sale Order. When the bankruptcy court asked Andrus if he had been notified of the August Sale Hearing "through another source" and had participated in the August Sale Hearing, Andrus again answered both questions in the affirmative.

The bankruptcy court ultimately decided to convert WBGI's chapter 11 case to chapter 7. It entered the Conversion Order on May 1, 2014. The bankruptcy court took care to note in the Conversion Order that both Andrus and Wagner appeared at the Conversion Hearing.

Lee, Andrus and Wagner appealed the Conversion Order, as well as "all incidental matters including the failure to notice

11

Creditors, etc."

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We discuss our jurisdiction below, but generally, we have jurisdiction to review the Conversion Order under 28 U.S.C. § 158.

## ISSUE

Lee and Andrus essentially raise one relevant issue on appeal: Did the bankruptcy court have authority to convert WBGI's chapter 11 case to chapter 7, given that most of WBGI's shareholders did not receive notice of the Conversion Hearing as required under Rule 2002(d)(4) and Local Rule 2002(a)(1)?

## STANDARDS OF REVIEW

We have a duty to consider sua sponte a justiciability issue like standing. Am. Civil Liberties Union of Nev. v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006). See also Palmdale Hills Prop., LLC v. Lehman Comm. Paper, Inc. (In re Palmdale Hills Prop., LLC), 654 F.3d 868, 873 (9th Cir. 2011)("standing is a necessary component of subject matter jurisdiction."). "Standing is an issue of law which we review de novo." Id. De novo means that we review a matter anew, as if no decision previously had been rendered. Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009).

We review a bankruptcy court's order converting a case from chapter 11 to chapter 7 for abuse of discretion. See, e.g., Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities), 264 F.3d 803, 807 (8th Cir. 2001); Johnston v. JEM Dev't Co. (In re Johnston), 149 B.R. 158, 160 (9th Cir. BAP

12

1992). Abuse of discretion review involves a two element test: First, we determine de novo whether the bankruptcy court identified the correct legal rule for application. See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). Second, we review whether the bankruptcy court erred in applying the correct legal rule. We will affirm unless the bankruptcy court's fact findings were illogical, implausible or without support from inferences that may be drawn from the record. Id.

We may affirm a bankruptcy court's decision on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**DISCUSSION**

A. Sale Order

We begin our analysis by noting what we will not consider in this appeal. At the time this appeal was filed, Rule 8001 set forth the procedure for appealing bankruptcy court orders and judgments. Rule 8001(a), which was adapted from Rule 3(a) of the Federal Rules of Appellate Procedure ("FRAP"), provided that:

> An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by 28 U.S.C. § 158(a)(1) or (a)(2) shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002 . . . . The notice of appeal shall (1) conform substantially to the appropriate Official Form, . . . .

The appropriate Official form was Form 17, which provided in its initial paragraph as follows:

> _____, the plaintiff [or defendant or other party] appeals under 28 U.S.C. § 158(a) or (b) from the judgment, order, or decree of the bankruptcy judge

13

(**describe**) entered in this adversary proceeding [or other proceeding, describe type] on the ____ day of (month), (year). (Emphasis added.)

Accordingly, the Appellants were required to designate in the Notice of Appeal the specific judgment or order appealed from in this case. (Effective December 1, 2014, the appellate Rules and official forms were revised to make this requirement even clearer.)

The only order attached to the Notice of Appeal is the Conversion Order. The Notice of Appeal does not identify any other order being appealed. Notably absent from the text or attachment to the Notice of Appeal in light of the arguments raised in Appellants' briefs is the Sale Order, which cannot credibly be characterized as "an incidental matter" to the Conversion Order.

Consideration of the scope of an appeal is fairly forgiving so long as it is clear what acts or orders the appeal encompasses. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988); Foman v. Davis, 371 U.S. 178 (1962); United States v. Arkison (In re Cascade Roads, Inc.), 34 F.3d 756, 761-61 and particularly, n.5 (9th Cir. 1994), citing Foman v. Davis, 371 U.S. at 181. However, that flexibility is not unlimited. See Smith v. Barry, 502 U.S. 244, 248 (1992). "[A]lthough a court may construe [FRAP] liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." Torres v. Oakland Scavenger Co., 487 U.S. at 317.

Nothing in the Notice of Appeal gives any indication that

14

Appellants sought to appeal the Sale Order. There is good reason for that: As detailed in the factual background discussion _supra_, Wagner and Andrus participated actively in proceedings before the bankruptcy court leading up to the entry of the Sale Order. Yet, no timely appeal from the Sale Order was filed within the 14-day **jurisdictional** time limit of Rule 8002. The Sale Order further included findings and a determination that BWA, LLC was a good faith purchaser for purposes of § 363(m). Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, **unless such authorization and such sale or lease were stayed pending appeal.** (Emphasis added.)

After the Sale Order was entered on September 25, 2013, no stay of the sale to BWA, LLC was sought or obtained.

In addition, Lee signed the purported reorganization plan for WBGI, proposed on his behalf together with Andrus and Wagner and filed with the bankruptcy court in April 2014 shortly before the Conversion Hearing. However, in spite of the fact that the purported reorganization plan recognized that the bankruptcy court had approved a sale of WBCI's operating assets, Lee has never appeared before the bankruptcy court at any time to challenge the Sale Order on lack of notice or any other grounds.[12]

---

[12]Lee only tardily signed the Notice of Appeal, and he did not sign any of Appellants' pro se briefs filed in this appeal. He appears to be participating as a mere camp follower in

(continued...)

15

We note that the deadline to seek relief from the Sale Order in bankruptcy court on grounds of mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; and/or fraud, misrepresentation or misconduct by an opposing party under Civil Rule 60(b)(1), (2) or (3) is now long past.

Generally, and particularly in situations where § 363(m) applies, where a sale of bankruptcy estate property has been approved by order of the bankruptcy court, if no stay of the sale is obtained, an appeal of the sale order is moot. See, e.g., Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.), 2014 WL 5859300 (9th Cir. Nov. 12, 2014) ("[A]ppeals of unstayed sales orders to good faith purchasers are moot under the broader 'bankruptcy mootness rule' that complements bankruptcy law regardless of whether the sales should have been made."); Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170 (9th Cir. 1988).

In this appeal, there is no reference in the Notice of Appeal to the Sale Order, and a copy of the Sale Order was not attached to the Notice of Appeal. Accordingly, this appeal does not encompass the Sale Order, and we do not consider any issues or arguments raised by the Appellants in their briefs with respect to the Sale Order. See, e.g., Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 6 (1st Cir. 2003).

[12](...continued)
Wagner's litigation adventures.

16

B.    Appellants' Lack of Standing to Raise Claims of Other Shareholders

"In every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004)("Elk Grove"). "This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975).

A litigant must have both constitutional standing and prudential standing for a federal court to exercise jurisdiction over the case. Elk Grove, 542 U.S. at 11-12. Constitutional standing requires the litigant to demonstrate "that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." Id. at 12. Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights." Elk Grove, 542 U.S. at 12 (citation and quotation signals omitted). To establish prudential standing, the litigant must: 1) assert his own rights, rather than rely on the rights or interests of third parties; 2) allege an injury that is more than a generalized grievance; and 3) allege an interest that is within the zone of interests protected by the statute or constitutional guarantee in question. Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1081 (9th Cir. 1987). "Failure to satisfy any of these constitutional or prudential requirements defeats standing." Id. (citation omitted).

Additionally, with respect to appeals involving bankruptcy matters, the appellant must be "a person aggrieved" by the

17

bankruptcy court's order.  Motor Veh. Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 884 (9th Cir. 2012).  That is, the appellant must be directly and adversely affected by the bankruptcy court's order – it must diminish the appellant's property, increase his burdens, or detrimentally affect his rights.  Id.

On appeal, Lee and Andrus challenge the Conversion Order on a single ground: the bankruptcy court lacked jurisdiction to convert WBGI's chapter 11 case to chapter 7 because most of WBGI's shareholders did not receive notice of the Conversion Hearing as required under Rule 2002(d)(4) and Local Rule 2002(a)(1).[13]

Lee and Andrus acknowledge that they obtained notice of the Conversion Hearing.  Appellants' Opening Brief at 3, 6; Appellant's Reply Brief at 2, 4.  However, they want to make arguments on behalf of the "600+ shareholders" of WBGI who allegedly did not receive notice of the Conversion Hearing.  In short, we conclude that they have no standing to do so.

As the bankruptcy court pointed out at the Conversion Hearing, Andrus (who was present) could not make any

---

[13] Rule 2002(d) provides, in relevant part: "In a chapter 11 reorganization case, unless otherwise ordered by the court, the clerk, or some other person as the court may direct, shall in the manner and form directed by the court give notice to all equity security holders of . . . (4) the hearing on the dismissal or conversion of a case to another chapter . . . ."
Local Rule 2002(a) provides, in relevant part:  "(1) Any person who files a pleading, written motion or other document that requires notice to another party is responsible for serving all parties who must be served.  Unless the court directs otherwise, the clerk will not serve those notices."

18

representations on behalf of other, absent shareholders. Neither Lee nor Andrus are licensed attorneys, employed by other shareholders to represent them in WBGI's bankruptcy case. Nor have either of them demonstrated before the bankruptcy court or before this Panel that they have any authorization from any other shareholders to act on their behalf. Therefore, Lee and Andrus cannot raise arguments that otherwise might have been available to other shareholders based on an alleged lack of notice as they lack prudential standing to do so.

C. Waiver of Arguments

Lee had notice of the UST Motion to Dismiss and, in fact, filed an affidavit opposing the motion on March 28, 2014, well in advance of the Conversion Hearing. Lee, however, did not attend the Conversion Hearing personally. Andrus did attend the Conversion Hearing and testified and argued against dismissal or conversion to the bankruptcy court.

Lee and Andrus personally do have standing to appeal the Conversion Order in their own rights. However, other than arguing the alleged lack of notice to other shareholders, they do not present any arguments in their briefs as to how the bankruptcy court abused its discretion in granting the UST Motion to Dismiss and entering the Conversion Order. Accordingly, any such arguments are deemed waived. "We review only issues which are argued specifically and distinctly in a party's opening brief." Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994), citing Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir. 1986).

Even if we were to proceed to review the bankruptcy court's

decision to convert WBGI's chapter 11 case to chapter 7 on the merits, the record amply supports the bankruptcy court's decision on at least the following grounds: 1) WGBI was not filing its required monthly operating reports; 2) WBGI was delinquent in paying the UST quarterly fees; 3) WGBI was not an operating entity, as its only operating assets had been sold months before pursuant to the Sale Order that never was appealed; and 4) WGBI's sole remaining assets included limited cash and its nondischargeable judgment against Wagner, that could be evaluated for collectibility by a chapter 7 trustee.

**CONCLUSION**

Based on the foregoing analysis, we AFFIRM the Conversion Order.